# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**EASTERN DIVISION**

**CIVIL ACTION NO.:**

| | |
|---|---|
| **THOMAS MASON** | |
| **PLAINTIFF** | |
| **v.** | |
| **MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION, THOMAS MASSIMO, DANIEL MCGILLICUDDY, LAURIE BURT, MARGARET STOLFA, and DANIEL D'HEDOUVILLE** | **CIVIL COMPLAINT** |
| **DEFENDANTS** | |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

Thomas Mason brings claims for violation of the Family Medical Act ("hereinafter FMLA") 29 U.S.C. § 2601 *et seq.,* retaliation, intentional infliction of emotional distress, intentional interference with advantageous business relations, invasion of privacy (M.G.L. c.214 § 1B), and conversion.  Mr. Mason's claims arise out of acts of his former employer, Massachusetts Department of Environmental Protection ("DEP"), in terminating Mr. Mason's employment for unsubstantiated reasons after Mr. Mason made numerous requests for leave under FMLA.

## **PARTIES**

1.    Plaintiff, Thomas Mason (hereinafter "Mr. Mason"), is an individual who resides at 368 Bedford Street, Lakeville,  Plymouth County, Massachusetts,  02347

2.    Defendant, Massachusetts Department of Environmental Protection (hereinafter "DEP"), is a nonprofit state agency, with its principal place of business located at One Winter Street, Boston, Suffolk County, Massachusetts, 02108.

3.    The Defendant, Mr. Thomas Massimo (hereinafter "Mr. Massimo"), is an individual who worked in the Director of Labor Relations position with the DEP at the time of alleged violations contained in this Complaint. Mr. Massimo was subsequently promoted to the Deputy Commissioner position with the DEP and continues to be employed in that position. The DEP is a nonprofit state agency, with its principal place of business located at One Winter Street, Boston, Suffolk County, Massachusetts, 02108

4.    The Defendant, Mr. Daniel McGillicuddy (hereinafter "Mr. McGillicuddy"), is an individual who at the time of the violations identified herein, worked in the Deputy Commissioner for Administration position at the DEP, a nonprofit state agency, with its principal place of business located at One Winter Street, Boston, Suffolk County, Massachusetts, 02108.

5.    The Defendant, Ms. Laurie Burt (hereinafter "Ms. Burt"), is an individual who works as the Commissioner of the DEP, nonprofit state agency, with its principal place of business located at One Winter Street, Boston, Suffolk County, Massachusetts, 02108.

6.    The Defendant, Ms. Margaret Stolfa (hereinafter "Ms. Stolfa"), is an individual who works in the General Counsel position at DEP, nonprofit state agency, with its principal

place of business located at One Winter Street, Boston, Suffolk County, Massachusetts 02108.

7.    The Defendant, Mr. Daniel d'Hedouville (hereinafter "Mr. d'Hedouville'), is an individual who works in the Chief General Counsel of the DEP's South East Regional ("SERO Office"), a nonprofit state agency, with its principal place of business located at One Winter Street, Boston, Suffolk County, Massachusetts, 02108.

## JURISDICTION

8.    Plaintiff Mr. Mason timely filed his claims for handicap discrimination with the honorable Massachusetts Commission Against Discrimination (hereinafter "MCAD") and the Equal Employment Opportunity Commission (hereinafter "EEOC").  To date, Plaintiff has not removed his Charge of Discrimination from MCAD and the EEOC in order to file his M.G.L. c. 151B claims relative to supplemental jurisdiction with this Honorable Court pursuant to 28 U.S.C. § 1367.

9.    This Honorable Court has original jurisdiction pursuant to 28 U.S.C. § 1331 based on federal questions over the claims raised under 29 U.S.C. § 2601 *et seq.,* and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the common-law tort claims.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10.    Plaintiff incorporates by reference paragraphs 1 through 9, inclusive, of this Complaint.

11.    By way of background, on or about June 23, 1989, the Supreme Judicial Court of Massachusetts admitted Mr. Mason to the practice of law in the Commonwealth of Massachusetts.

3

12.    Following Mr. Mason's admission to the Massachusetts Bar, the Massachusetts Republican party appointed Mr. Mason to its Assistant General Counsel position.

13.    At this time, Mr. Mason was also building his solo law practice.

14.    In or about 1992, Mr. Mason was reappointed to the Assistant General Counsel position for the Massachusetts Republican party.

15.    In or about 1995, Mr. Mason retired from his private law practice.

16.    With the foregoing said, in or about 1995, Mr. Mason applied for vacant positions within the Commonwealth of Massachusetts.

17.    On or about November 5, 1995, Mr. Mason was appointed to a Counsel I position for the DEP.

18.    Soon thereafter, Mr. Mason commenced his employment with the DEP at its Lakeville, Massachusetts, location, and he was directed to report to Donald Nagle, Counsel II.

19.    On or about February 21, 1999, the DEP promoted Mr. Mason to the Counsel II position.

20.    In Mr. Mason's new position, he was directed to report to Ann Bingham, Regional General Counsel, and to Daniel d'Hedouville, Counsel II, who became Regional/General Counsel in or about January, 2000.

21.    From approximately June 21, 2007, to January 30, 2008, Mr. Mason was directed to report to Mr. d'Hedouville, Chief General Counsel for the SERO Office, and to Margaret R. Stolfa, DEP's General Counsel.

22.    During the course of Mr. Mason's employment with the DEP, Mr. Mason always performed his job duties in a competent, professional, and acceptable manner, as is

evidenced by the lack of any negative supporting documentation contained in Mr. Mason's personnel file, and by the acceptable Performance Evaluations Mr. Mason attained commending his work performance, coupled with the promotion Mr. Mason received to the Counsel II position.

23.    Specifically, on or about July 15, 1999, Ms. Bingham and Mr. d'Hedouville provided Mr. Mason with a favorable Performance Evaluation.

24.    In said Performance Evaluation described in paragraph 23, Ms. Bingham commended Mr. Mason's work ethic and performance.

25.    In fact, Ms. Bingham stated in the aforementioned Performance Evaluation, "Tom has insight and an effective legal mind which has been demonstrated on many of his individual projects" and that Mr. Mason was a "true asset to the DEP."  See Mr. Mason's 1999 Performance Evaluation, which is hereto appended as "Exhibit A."

26.    In addition, on or about June 31, 2001, Mr. d'Hedouville provided Mr. Mason with a positive Performance Evaluation.

27.    In the Performance Evaluation described in paragraph 26, Mr. d'Hedouville states, "In addition to the 21E duties, Tom has been a great help with financial inability (sic) to pay matters as well as conf. business requests for all applications.- this has alienated (sic) work load pressures…" Please see Mr. Mason's 2001 Performance Evaluation, which is hereto appended as "Exhibit B."

28.    Furthermore, Mr. d'Hedouville praised Mr. Mason's work performance in his 2001 annual Performance Evaluation.

29.    Specifically, Mr. d'Hedouville stated in Mr. Mason's 2001 Performance Evaluation, "Tom continues to handle BWSC ["Bureau of Waste Site Cleanup"] matters - he is also willing to pick up REACT cases which is helpful to us. His financial analysis is relied

upon not only by SERO but by other regions as well." Furthermore, Mr. d'Hedouville also stated in this evaluation, "Rich Gioiosa, Enforcement Coordinator, indicated to me that Tom was as asset to the financial issues relative to the Waters case - a large air pollution case. Additionally, Tom has helped the air section on confidential business claims which has been a great help." See "Exhibit C."

30. Moreover, on or about July 7, 2004, Mr. d'Hedouville provided Mr. Mason with another acceptable Performance Evaluation.

31. Specifically, Mr. d'Hedouville stated in Mr. Mason's 2004 Performance Evaluation, "Tom continued to serve the role as financial …/economic benefit lead which is an asset to SERO."  See "Exhibit D."

32. Furthermore, in 2005, Mr. d'Hedouville provided Mr. Mason with another positive Performance Evaluation. See "Exhibit E."

33. Moreover, in Mr. Mason's 2006 annual Performance Evaluation, Mr. d'Hedouville commended Mr. Mason's work performance, "Tom's work was fine - continues to be help to BWSC - also has taken on several REACT cases-often difficult…" See "Exhibit F."

34. Furthermore, in or about July, 2007, the DEP informed Mr. Mason that he was assigned to the Lead Counsel position for the Massachusetts Military Reservation on Cape Cod. (The Massachusetts Military Reservation is the largest funded environmental cleanup site in the United States of America.)

35. It should be noted that the DEP either failed or refused to provide Mr. Mason with his 2007 Performance Evaluation and/or to provide him with his Primary Job Duties Performance Criteria.

36. Upon information and belief, the DEP either failed or refused to comply with M.G.L. c.

31 § 6A, "Performance evaluation system; implementation," the evaluation system shall, to the maximum extent possible, evaluate on the basis of the objective criteria, the job performance of each employee, and the results of such evaluations may be utilized by the department or the appointing authority in future personnel determinations.

37.   Mr. Mason has a record of mental and physical impairments.

38.   In fact, Mr. Mason has a record of asthma, hearing problems, diverticulitis, stress/hypertension, and anxiety.

39.   Mr. Mason's asthma, hearing problems, diverticulitis, stress/hypertension, and anxiety limit his major life functions of sleeping, concentrating, interacting with others, learning, and working.

40.   In or about 1999, Mr. Mason requested of Ms. Bingham to be reasonably accommodated for his handicaps, including but not limited to, his ear/hearing problems/ and for his asthma.

41.   Specifically, Mr. Mason requested of Ms. Bingham to move his office from an upper floor to a lower floor, which would reasonably accommodate him for his disabilities.

42.   Ms. Bingham assented to Mr. Mason's reasonable request for accommodations described in paragraph 41, and moved his office to a lower floor.

43.   In or about 2000, however, when Mr. Mason commenced reporting to Mr. d'Hedouville, Mr. d'Hedouville moved Mr. Mason's office to an upper floor.

44.   Due to the foregoing, Mr. Mason filed a request for reasonable accommodations for his disabilities with the DEP.

45.   Every state agency within the Commonwealth of Massachusetts employs an Affirmative

Action Officer who is responsible for evaluating employees' requests for reasonable accommodations.

46. Instead of directing the Affirmative Action Officer to evaluate Mr. Mason's request for reasonable accommodations for his disabilities, the DEP assigned Thomas Massimo, the DEP Director of Labor Relations/Workforce Services, to evaluate Mr. Mason's request.

47. Mr. Massimo denied Mr. Mason's reasonable request for accommodations.

48. With the foregoing said, Mr. Mason filed a Charge of Discrimination with the honorable MCAD for handicap discrimination relative to Mr. Massimo's either failure or refusal to assent to Mr. Mason's request for reasonable accommodations for his impairments.

49. In or about 2003, Mr. Mason's physician diagnosed him with chronic depression.

50. Since Mr. Mason's depression diagnosis, Mr. Mason has sought medical treatment for this impairment.

51. In or about 2005, Mr. Mason was also diagnosed with high blood pressure/hypertension.

52. Since the diagnosis described in paragraph 49, Mr. Mason has been under his Doctor's care and treatment for this impairment.

53. In or about 2005, Mr. Mason first informed Mr. d'Hedouville of his medical diagnoses of high blood pressure/hypertension and depression.

54. In or about the summer of 2007, the DEP subjected Mr. Mason to adverse employment actions by increasing Mr. Mason's workload, responsibilities, and duties.

55. Specifically, around this time, the DEP added seven (7) towns to the SERO Office region; Mr. Mason was therefore responsible for these towns in addition to his current

workload.

56.    From the commencement of Mr. Mason's employment with the DEP, Mr. Mason was assigned to work with the BWSC, specifically with Kevin Kiernan, Counsel II.

57.    During the winter of 2007, the DEP removed Mr. Kiernan from the BWSC assignment.

58.    As a direct result of Mr. Kiernan's removal, Mr. Mason was directed to perform Mr. Kiernan's Counsel II duties, as well as his own; thus Mr. Mason was performing the work duties of two (2) Attorneys.

59.    In or about July 2007, the DEP also assigned Mr. Mason to the Lead Counsel position for the Massachusetts Military Reservation.

60.    In or about July 2007, Mr. d'Hedouville promised Mr. Mason that, due to all the duties and responsibilities associated with the Lead Counsel position for the Massachusetts Military Reservation, Mr. d'Hedouville would decrease Mr. Mason's other work duties, including but not limited to litigation.

61.    Despite this promise, Mr. d'Hedouville either failed or refused to decrease Mr. Mason's work duties and responsibilities.

62.    In fact, Mr. d'Hedouville subjected Mr. Mason to numerous adverse employment actions by assigning Mr. Mason with additional tasks, duties, and responsibilities.

63.    Due to Mr. Mason's increased workload, in or about August 2007, Mr. Mason's impairments were exacerbated.

64.    At this time, however, Mr. Mason was able to adequately perform the assigned additional work duties and responsibilities.

65.     Due to Mr. Mason's increased work duties and responsibilities, he began to suffer from severe episodes of diverticulitis, depression, stress/hypertension, and anxiety.

66.     At this point, Mr. Mason informed Mr. d'Hedouville and DEP Management that he was suffering from severe episodes of diverticulitis, depression, stress/hypertension, and anxiety, and that the increased work duties and responsibilities exacerbated his impairments therefore interfering with his ability to work.

67.     Subsequently, in or about September 2007, the DEP subjected Mr. Mason to further adverse employment actions by withholding pertinent work documentation from him.

68.     The pertinent documentation described in paragraph 67 was necessary for Mr. Mason to adequately perform the duties associated with his Counsel II position in a competent, professional, and acceptable manner.

69.     Moreover, in or about September 2007, the DEP assigned Mr. Mason to work on an Administrative Appeals case with approximately two (2) days' notice. It should be noted that most pre-hearing conferences are scheduled thirty (30) days in advance.

70.     At the same time described in paragraph 69, the DEP subjected Mr. Mason to additional adverse employment actions by simultaneously assigning him with extra tasks, work duties, and responsibilities.

71.     Due to the extreme overload of assignments tasked to Mr. Mason, the DEP had knowledge that Mr. Mason could not possibly perform the aforementioned additional tasks and work duties in a competent and time-sensitive manner.

72.     At this time, the increased workload exacerbated Mr. Mason's impairments.

73.     The increase workload interfered with Mr. Mason's major life functions of working, sleeping, concentrating, learning, and interacting with others.

74.    Due to Mr. Mason's increased work duties and responsibilities, in September and October, 2007, Mr. Mason sought medical treatment for his diverticulitis, depression, hypertension/stress, and anxiety at the Lahey Clinic in Burlington, Massachusetts.

75.    Specifically, on October 3rd and October 6th, 2007, Mr. Mason sought treatment at the Emergency Room of the Lahey Clinic.

76.    During this time period, Mr. Mason kept his doctors' appointments by means of utilizing his accrued sick and vacation time.

77.    At this point, Mr. Mason again informed Mr. d'Hedouville that he was suffering from severe attacks of diverticulitis, depression, stress/hypertension, and anxiety, coupled with the fact that the increased work duties, and responsibilities were exacerbating his impairments and interfering with his ability to work.

78.    On October 3, 2007, Mr. Mason was hospitalized at Lahey Clinic for stress, anxiety, and gastrointestinal illness.

79.    In fact, Mr. Mason was hospitalized at Lahey Clinic for his impairments.

80.    The DEP knew or should have known that Mr. Mason was hospitalized for his previously reported handicapping impairments.

81.    Despite this knowledge, Mr. d'Hedouville either failed or refused to inform Mr. Mason of his FMLA rights.

82.    After the DEP regarded/perceived Mr. Mason as a handicapped individual, the DEP subjected Mr. Mason to additional instances of adverse employment actions.

83.    In fact, on November 16, 2007, the DEP provided Mr. Mason with a Written Warning for

his alleged failure or refusal to provide Mr. Fallon, DEP's Chief Litigation Counsel, with the opportunity to review a Settlement Agreement on which Mr. Mason was working.

84.    It should be further noted that, prior to receipt of the Written Warning described in paragraph 83, Mr. Mason settled an estimated two hundred (200) cases for the DEP.

85.    Prior to the receipt of the Written Warning described in paragraph 83, Mr. Mason was never required to review Settlement Agreements with Mr. Fallon. Mr. Fallon was never Mr. Mason's supervisor.  Further, during Mr. Mason's years in the Counsel II position, the standard procedure in DEP was to have staff draft all Settlement Agreements, which were then reviewed by the staffers' Managers and the Attorney who was assigned to the case; never once did Mr. Fallon participate in this process with Mr. Mason.

86.    Upon information and belief, the DEP provided Mr. Mason with the November 16, 2007, Written Warning because of Mr. Mason's physical and mental impairments and his requests for reasonable accommodations.

87.    Mr. Mason's similarly-situated co-workers were never required to provide Mr. Fallon, or any other DEP Attorney, with Settlement Agreements for approval if Mr. Fallon and/or any other DEP Attorney were not assigned to the case in which these similarly-situated co-workers were assigned to draft Settlement Agreements.

88.    Furthermore, as stated above, the DEP either failed or refused to provide Mr. Mason with his 2007 Performance Evaluation and his Primary Job Duties Performance Criteria.

89.    Despite the fact that the DEP either failed or refused to provide Mr. Mason with his 2007 Performance Evaluation and his Primary Job Duties Performance Criteria, the DEP provided Mr. Mason with the November 16, 2007, Written Warning for Mr. Mason's failure to get Mr. Fallon's approval on the above-referenced Settlement Agreement.

90.    Around the same time that Mr. Mason received the November 16, 2007, Written

Warning, Mr. Fallon, Mr. d'Hedouville, Daniel McGillicuddy (DEP's Commissioner for Administration), Mr. Massimo, Laurie Burt, DEP Commissioner, David Johnson, SERO Office Director, and Gary Davis, Ms. Stolfa's Assistant and Ms. Stolfa, subjected Mr. Mason to further adverse employment actions by means of scrutinizing his work more closely than his similarly-situated non-handicapped co-workers and treating Mr. Mason more harshly than his similarly-situated non-handicapped co-workers.

91.     Around the time Mr. Mason received the November 16, 2007, Written Warning, Mr. Mason received an email from DEP regarding a disciplinary hearing/meeting. Mr. Mason responded whereby he sent an email to Ms. Stolfa and Mr. d'Hedouville inquiring as to the subject of the meeting. Ms. Stolfa responded that Mr. Mason would "find out at the meeting."

92.     Ms. Stolfa, Mr. Fallon, Mr. d'Hedouville, Mr. Johnson, and Mr. Davis commenced inquiring of Mr. Mason's colleagues and/or staff relative to Mr. Mason's work performance and accessed Mr. Mason's computer files in an attempt to discipline Mr. Mason.

93.     In fact, Mr. Fallon, who is not Mr. Mason's supervising Attorney or Manager, contacted Mr. Mason to inquire of Mr. Mason's work performance relative to the Ferreira's Junkyard matter, a pending case.

94.     Since SERO Office staff members informed Mr. Mason that he was being investigated by DEP personnel, Mr. Mason asserted his Weingarten Rights as a union member verbally and though email.

95.     During a subsequent meeting relative to Mr. Mason's work performance on or about November 17, 2007, despite the fact that Mr. Mason asserted his Weingarten Rights to Ms. Stolfa, Mr. d'Hedouville, Mr. Johnson, Mr. Davis, and Mr. Fallon, he was ordered to respond to the work-related questions relative to his work performance.

96.   Mr. Mason objected to providing responses to these work-related questions because he believed that he would be disciplined for his responses, thereby raising a logical concern relative to his Weingarten Rights

97.   Mr. Mason then  informed Commissioner Burt, Mr. Massimo, Mr. McGillicuddy Ms. Stolfa, Mr. d'Hedouville,  Mr. Johnson, Mr. Fallon, and Mr. Davis that he desired to have a union representative present while he responded to these work-related questions.

98.   Mr. Mason was ordered to answer these work related questions by Ms. Stolfa under the threat of further discipline up to and including suspension. Mr. Mason followed Ms. Stolfa's directive and answered the questions. Mr. Mason's responses, however, were used as a basis for suspending him.

99.   Mr. Mason was disciplined at the November 17th meeting with Ms. Stolfa and Mr. Fallon.

100.   Both before and during the meeting described above, Mr. Mason engaged in protected activities whereby he asserted his Weingarten Rights.

101.   During this meeting, in emails, and in conversations (in front of  DEP staff), Mr. Fallon began questioning Mr. Mason's work performance.

102.   Mr. Mason responded to Mr. Fallon's questions by again asserting his Weingarten Rights for Union representation. Commissioner Burt, Mr. Massimo, Mr. McGillicuddy Ms. Stolfa, Mr. d'Hedouville, Mr. Johnson, Mr. Fallon, Mr. Davis, and Ms. Stolfa responded to Mason's request for Union representation by either failing or refusing to allow Mr. Mason to attend the meeting with said representation in direct violation of Mr. Mason's Weingarten Rights.

103.   Mr. Mason answered Mr. Fallon's questions.

104.   Even though Mr. Mason's request for Union representation was denied in contravention

of his Weingarten Rights, Mr. Mason followed Ms. Stolfa's directive and reluctantly answered all Mr. Fallon's questions regarding his work performance.

105.    The DEP used Mr. Mason' s responses to Mr. Fallon's, Mr. d'Hedouville's, Ms. Stolfa's, Mr. Davis's, and Mr. Johnson's questions regarding Mr. Mason's work performance as a basis for additional discipline against him despite Mr. Mason's assertion of his Weingarten Rights.

106.    Upon information and belief, Ms. Stolfa, with the knowledge and consent of Commissioner Burt ordered Mr. Mason to answer the questions regarding his work performance.

107.    Mr. McGillicuddy, Mr. Massimo, Ms. Stolfa, Mr. Fallon, and Commissioner Burt were all well aware that Mason's requested union representation when he answered questions relative to his work performance.

108.    Mr. McGillicuddy, Mr. Massimo, Ms. Stolfa, Mr. Fallon, and Ms Burt either failed or refused to rectify the DEP's violation of Mr. Mason's Weingarten Rights and allowed the DEP to use Mr. Mason's responses to Mr. Fallon's questions regarding Mr. Mason's work performance for the purposes of discipline.

109.    In fact, on November 28, 2007, the DEP suspended Mr. Mason without pay for five (5) business days for Mr. Mason's alleged lack of veracity, poor work performance, and insubordination.

110.    On November 28, 2007, the DEP suspended Mr. Mason without pay for five (5) business days for Mr. Mason's alleged lack of veracity, poor work performance, and insubordination based on Mr. Mason's responses to Mr. Fallon's work-related questions described above.

111.    The DEP cannot provide any documentary evidence that Mr. Mason's suspension

described in paragraphs 109-110 was directly related to the allegations of Mr. Mason's lack of veracity, poor work performance, and insubordination.

112.    On November 29, 2007, Mr. Mason submitted a medical note from Lynne Smith, Nurse Practitioner (N.P.), of Crown Medical Group, P.C., 500 Congress Street, Quincy, Massachusetts, to Mr. Massimo and Mr. d'Hedouville

113.    Nurse Practitioner Smith diagnosed Mr. Mason with high blood pressure, dehydration, diarrhea, and significant weight loss.

114.    On or about December 2, 2007, Mr. Mason sent an email to Mr. d'Hedouville requesting information relative to FMLA.

115.    Mr. d'Hedouville forwarded Mr. Mason's request, described in paragraph 114, to Mr. Massimo and Ms. Stolfa.

116.    Interestingly, on or about December 5, 2007, the DEP and, in particular Mr. Massimo, denied Mr. Mason leave under FMLA, even though Mr. Mason had only requested that the DEP and/or Mr. Massimo provide him with information regarding FMLA.

117.    On or about December 5, 2007, Mr. Mason submitted a correspondence to Mr. Massimo, whereby Mr. Mason informed Mr. Massimo that he needed to take a leave of absence from work for treatment of his disabilities, and that he would use his accrued sick and vacation time if necessary.

118.    Mr. Mason's five (5) business-day suspension described in paragraphs 109-110, concluded at the close of business on December 5, 2007, and Mr. Mason was required to return to work the following day, unless his absence was excused.

119.    As such, Mr. Mason provided the DEP with a medical note excusing him from reporting to work on December 6, 2007.

120.    Specifically, on December 6, 2007, Mr. Mason submitted a facsimile to Mr. Massimo and Mr. d'Hedouville a document titled "Certification of Health Care Provider," a form issued by the U.S. Department of Labor pursuant to the FMLA. The Certification of Health Care Provider form was executed by Nurse Practitioner Smith, which specifically stated, among other things, that "it was medically necessary for [Mr. Mason] to remain out of work [until] evalu[ations] [were] completed," and "Mr. Mason is unable to work presently." This Certification of Health Care Provider form was relative to Mr. Mason's "serious health condition" and his request for FMLA leave.

121.    On or about December 11, 2007, Mr. Massimo sent an email to Mr. Mason asking for details about what type of ailment Mr. Mason suffered from and the nature of his medical condition, and he requested that the Certification of Health Care Provider form address those particular conditions.

122.    In addition, Mr. Massimo stated in the email described in paragraph 121 that the Certification of Health Care Provider form was not signed by a Medical Doctor.

123.    Furthermore, Mr. Massimo's email requested that Mr. Mason provide the doctor with recent work history, stating "Disciplinary Action," when requesting the Certification of Health Care Provider form relative to Mr. Mason's request for FMLA.

124.    On or about December 12, 2007, Nurse Practitioner Smith notified the DEP that Mr. Mason had been diagnosed with high blood pressure, gastroenteritis, and sleep deprivation.

125.    On or about December 12, 2007, Mr. Mason again presented to the DEP and Mr. Massimo his request for FMLA leave through December 23, 2007, and the above described Certification of Health Care Provider form executed by Nurse Practitioner Smith.

17

126.    During the week of December 16, 2007, the DEP either failed or refused to compensate Mr. Mason. The DEP, however, did not deny Mr. Mason's similarly-situated co-workers from utilizing their accrued sick time and/or vacation time when unable to work.

127.    In fact, Mr. Massimo reiterated on December 20, 2007, that the DEP would not allow Mr. Mason to take an FMLA leave, use his accumulated sick time or vacation time.

128.    Nurse Practitioner Smith then sent a correspondence to the DEP, stating that the stress level caused by the DEP's denial of Mr. Mason's FMLA leave would worsen his health condition. Mr. Massimo responded to Mr. Mason via email, stating Nurse Practitioner Smith's correspondence was very unprofessional and as the employer they have the right to require medical documentation.

129.    Mr. Massimo, however, approved Mr. Mason's similarly-situated non-handicapped co-workers' requests for leave pursuant to FMLA when executed by a Health Care Provider, including, but not limited to, a Nurse Practitioner.

130.    On or about December 23, 2007, the DEP denied Mr. Mason's request for leave pursuant to FMLA because it was not signed by a Medical Doctor but by Nurse Practitioner Smith, because it failed to discuss the nature of Mr. Mason's medical condition, and because it failed to include the reasons why the medical leave was necessary.

131.    Upon information and belief, the DEP engages in the pattern and practice of accepting medical documentation and/or Health Care Provider forms executed by Nurse Practitioners when an employee requests a leave pursuant to FMLA, but the DEP either failed or refused to follow these same policies and procedures when it came to Mr. Mason.

132.    On or about January 2, 2008, the DEP and Mr. Massimo informed Mr. Mason that the DEP scheduled an independent medical examination, a second opinion for Mr. Mason.

**133.**    On or about January 7, 2008, the DEP and Mr. Massimo informed Mr. Mason as follows:

> *As per Article 8.7.2 B2 of the N.A.G.E. collective bargaining agreement, the DEP has arranged by you to be seen by a Medical Doctor of our choosing.*
> *An appointment has been made for you on Wednesday, January 8, 2008 at 1:30 PM with:*
>
> > *Dr. Brian Morris*
> > *101 Arch Street*
> > *Boston, MA 02108*
>
> *You are requested to attend this appointment, and I will be informed of the outcome by the doctor. As you are required to attend, you will be paid for the day of the appointment.*

**134.**    Article 8.7.2 of the N.A.G.E. collective bargaining agreement states as follows:

> *At least thirty (30) days in advance, the employee shall submit a written notice of his/her intent to take such leave and the dates and expected duration of such leave. If thirty (30) days is not possible, the employee shall give notice as soon as practicable. The employee shall provide, upon request by the appointing authority medical evidence. Satisfactory evidence is deemed under Section 1.K.2 of this Article. If the Appointing Authority has reason to doubt the validity of the medical evidence it may obtain a second opinion at its own expense.*

**135.**    Following the advice of Mr. Mason's NAGE (Union) representative, Mr. Mason followed DEP's directive and was examined by Dr. Morris.

**136.**    Dr. Morris is an employee of or is affiliated with Health Resource Corporation.

**137.**    Mr. Mason's Union representative also informed Mr. Mason that he could exercise his right to get a third medical opinion.

138.    On or about December 27, 2007, Nurse Practitioner Smith advised the DEP to refrain from contacting Mr. Mason, as it was exacerbating his condition and delaying Mr. Mason's eventual return to work.

139.    On or about January 9, 2008, Mr. Mason attended the medical appointment with Dr. Morris.

140.    On or about January 9, 2008, Mr. Mason filled out a "Health Resources Pre-Placement Questionnaire" presented to him by a staff member of Dr. Morris's office.

141.    On a "yes" or "no" basis, Mr. Mason checked off the current state of his health regarding the questionnaire's listed illnesses or symptoms a "yes" relative to physical or mental distress.

142.    During the January 9, 2008 office visit, Mr. Mason was presented with a "Health Resources Patient Registration Form" ("Form").

143.    The Form requests in writing the following release:

*Medical Release*

*I, _____, hereby authorize Health Resources*

*(Name of Patient)*

*to release to _____, recommendations regarding my medical examination and the*

*(Name of Company)*

*results of any testing performed that relates to occupational hazards or exposures or any limitations on my assigned work.*

144.    At no time during his January 9, 2008 office visit with Dr. Morris, or at anytime thereafter, did Mr. Mason sign, date, or have anyone witness the Form.

145. The DEP and Dr. Morris both failed or refused to contact Mr. Mason's HCPs and/or Nurse Practitioner Smith to inquire about Mr. Mason's impairments and/or possible ways to accommodate Mr. Mason in the workplace for his disabilities.

146. It should be noted that Dr. Morris was commonly chosen by the DEP to perform second medical opinions on a regular basis.

147. Furthermore, Dr. Morris either failed or refused to examine Mr. Mason thoroughly, and Dr. Morris either failed or refused to look at the copies of the medical documentation that Mr. Mason provided to him regarding Mr. Mason's serious health conditions.

148. At the commencement of Mr. Mason's office visit with Dr. Morris, Dr. Morris stated to Mr. Mason, "I understand that you have been disciplined twice."

149. Mr. Massimo had informed Dr. Morris about Mr. Mason's previous disciplines.

150. During the January 9, 2008 office visit, Dr. Morris spent approximately spent thirty (30) minutes with Mr. Mason. During this time, Dr. Morris asked Mr. Mason's questions and filled out forms. However, Dr. Morris either failed or refused to conduct a thorough physical examination of Mr. Mason.

151. In fact, Dr. Morris only took Mr. Mason's blood pressure and palpated his abdomen.

152. On or about January 16, 2008, and notwithstanding Mr. Mason's refusal to sign the Medical Release Form, Dr. Morris provided his medical notes relative to Mr. Mason's January 9, 2008 office visit to the DEP and/or Mr. Massimo.

153. On January 23, 2008, the DEP conducted a Pre-Termination Hearing regarding Mr. Mason's employment. Mr. Massimo was the Hearing Officer.

154.    In a correspondence to Mr. McGillicuddy from Mr. Massimo regarding  Mr. Massimo's recommendation that the DEP terminate Mr. Mason's employment, Mr. Massimo stated in part as follows:

> *Based on my receipt of this medical evidence from Dr. Morris and the absence of any medical proof from Mr. Mason for more than one month at that point, I scheduled a Pre-termination hearing, at the DEP headquarters in Boston.*

155.    It should be noted that, as Hearing Officer, Mr. Massimo would have been biased against Mr. Mason due to Mr. Massimo's involvement relative to his denial: of Mr. Mason's FMLA leave, Mr. Massimo's denial of Mr. Mason's request for reasonable accommodations in or about 2000, and in regard to Mr. Mason's prior charge of discrimination filed in or about 2000 with the MCAD based upon Mr. Massimo's denial of Mr. Mason's request for reasonable accommodations.

156.    During the Pre-Termination Hearing, Mr. Massimo concluded that Mr. Mason had allegedly engaged in gross insubordination, insubordination, abused his sick leave, and refused to perform work duties.

157.    It should be further noted that Mr. Mason complained of Mr. Massimo's bias described in paragraph 155 to upper level management and requested an appeal.  The DEP, however, either failed or refused to provide Mr. Mason with an appeal.

158.    On January 30, 2008, Mr. Massimo issued a written correspondence to Mr. McGillicuddy recommending the termination of Mr. Mason for his failure to return to work in December 2007 from Mr. Mason's five (5) day suspension, for gross insubordination, insubordination, abuse of sick time, and refusal to perform work-related duties.

159.    Mr. Massimo's recommendation contained in the written correspondence described in paragraph 158, was made, despite, the submission of Mr. Mason's Certification of Health Care Provider form executed by Nurse Practitioner Smith which was in accordance with

the information required under FMLA.

160.    Mr. Mason, however, was terminated on or about January 31, 2008.

161.    It should be noted that on January 31, 2008, Mr. Mason was terminated based on Dr. Morris's second medical opinion, which is not required under FMLA, since Mr. Mason submitted the Certification of Health Care Provider form, which was completely filled out and executed by Nurse Practitioner Smith, and Mr. Mason's impairments met the criteria for a "serious health condition[s]" under the Act.

162.    It should be further noted that Mr. Mason informed Paul Dietel, Chief Human Resources Officer for the Commonwealth of Massachusetts, that his FMLA rights were violated by the DEP.

163.    Mr. Dietel either failed or refused to assist Mr. Mason and/or rectify the situation relative to the DEP's violations of Mr. Mason's Federal FMLA rights.

164.    In addition, Mr. Mason informed Sandra Border, Director of the Office of Diversity and Equal Opportunity with the Human Resources Division of the Commonwealth of Massachusetts, that his FMLA rights were violated by the DEP.

165.    Ms. Border either failed or refused to assist Mr. Mason and/or rectify the situation relative to the DEP's violations of Mr. Mason's Federal FMLA rights.

166.    On October 14, 2008, Mr. Mason's Union representative received a correspondence from Steven Perry, Senior Labor Relations Advisor with the Human Resources Division of Employee Relations for the Commonwealth of Massachusetts, which stated that Mr. Mason was terminated for just cause.

167.    Mr. Perry works for Mark D'Angelo, Director of Office of Employee Relations for the Human Resources Division of the Commonwealth of Massachusetts.

168.    Upon information and belief, Mr. D'Angelo has a friendly relationship with Mr. Massimo.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT
### As to the Defendants: Massachusetts Department of Environmental Protection, Thomas Massimo, Daniel McGillicuddy, Margaret Stolfa, Laurie Burt, and Daniel d'Hedouville

169.    Mr. Mason re-alleges and incorporates by reference by paragraphs 1 through 168, inclusive, of this Complaint.

170.    It should be further noted that the Department of Labor conducted an investigation based upon the DEP's denial of Mr. Mason's FMLA rights and it found the following violations described in paragraphs 171 through 183, below. See "Exhibit G."

171.    Definition of Serious Health Condition 825.114.

172.    Nurse Practitioner meets the definition of Health Care provider 825.118(2).

173.    In all circumstances it is the employer's responsibility to designate leave paid or unpaid as FMLA. 825.208.

174.    Employer knows of a reason for leave, responsibility to designate the leave as FMLA 825.208(e)(1);(e)(2).

175.    Entitled to return to work to the same position the employee held when leave commenced.  825.214.

176.    Interfering with, restraining or denying the exercise of any rights provided under the Act. 825.220.

177.   Employee to provide Employer with reasonable notice 825.301(b)(1).

178.   Employee need not expressly assert rights under the FMLA 825.303(b).

179.   Health Care provider, ("HCP") to furnish appropriate medical documentation 825.306
       (a)(b).

180.   Employer may not request additional information from the employee's health care
       provider. Employee may delay restoration until "Med Certification" is provided.
       825.307(a).

181.   Employer may not regularly contract with or otherwise regularly utilize the services of
       the HCP to furnish the second opinion. 825.307(2)(b).

182.   If the opinion of the Employee's and Employer's HCP differs, the Employer may require
       the employees to obtain "Med Certification" from 3rd opinion. If Employer does not
       attempt in good faith, the Employer will be bound by the 1st Medical Certification.
       825.307(2)(c).

183.   Employer may request recertification at any reasonable interval but not more than every
       30 days or validity of the medical certification 825.308.

184.   Defendants, actions violated FMLA, 29 U.S.C. § 2601, and interfered with Mr. Mason's
       rights under FMLA, 29 U.S.C. § 2601 *et seq.*: when Mr. Mason among other things,
       requested protection under FMLA and the Defendants either failed or refused to accept
       the Health Care Provider form executed by  Nurse Practitioner Smith, despite the
       submission of completed forms containing the information required under  FMLA; when
       Defendants denied Mr. Mason his rights under  FMLA; when the Defendants suspended
       Mr. Mason and requested personal medical facts and information regarding Mr. Mason's
       own serious health condition[s], which is not supported by the WH-380;  when the

Defendants terminated Mr. Mason based on Dr. Morris's second medical opinion (which second medical opinion is not required under FMLA since the WH-380 was completely filled out, meeting a "serious health condition" under FMLA);  when Defendants called upon Dr. Morris to provide the second medical opinion; and when Defendants commonly chose and used Dr. Morris to give medical opinions on a regular basis.

185.    As a direct and proximate result of the above-described conduct, Mr. Mason has sustained substantial injuries, including but not limited to: loss of compensation, benefits, attorney's fees, and costs.

WHEREFORE, Plaintiff, Mr. Mason demands judgment against the Defendants in an amount that will fairly and adequately compensate Plaintiff Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

A.  That Plaintiff be awarded compensatory damages including lost compensation and benefits;

B.  That Plaintiff be awarded liquidated damages in an amount equal to compensatory damages;

C.  That Plaintiff be awarded emotional distress damages;

D.  That Plaintiff be awarded punitive damages;

E.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and

F.  That this Honorable Court award the Plaintiff such other relief as it may deem proper and just.

## COUNT II
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
### As to the Defendants: Massachusetts Department of Environmental Protection, Thomas Massimo, Daniel McGillicuddy, Margaret Stolfa, Laurie Burt, and Daniel d'Hedouville

186.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 185, inclusive, of this Complaint.

187.    By his acts and conduct, Mr. Massimo intended to inflict significant emotional distress upon Mr. Mason.

188.    Mr. Massimo acted with the intent of causing Mr. Mason emotional distress.

189.    Mr. Massimo knew or should have known that his acts and conduct would likely result in Mr. Mason suffering significant emotional distress.

190.     By his acts and conduct, Mr. McGillicuddy intended to inflict significant emotional distress upon Mr. Mason.

191.    Mr. McGillicuddy acted with the intent of causing Mr. Mason emotional distress.

192.    Mr. McGillicuddy knew or should have known that his acts and conduct would likely result in Mr. Mason suffering significant emotional distress.

193.    By her acts and conduct, Ms. Stolfa intended to inflict significant emotional distress upon Mr. Mason.

194.    Mr. Stolfa acted with the intent of causing Mr. Mason emotional distress.

195.    Ms. Stolfa knew or should have known that her acts and conduct would likely result in Mr. Mason suffering significant emotional distress.

196.    By her acts and conduct, Ms. Burt intended to inflict significant emotional distress upon Mr. Mason.

197.    Ms. Burt acted with the intent of causing Mr. Mason emotional distress.

198.    Ms. Burt knew or should have known that her acts and conduct would likely result in Mr. Mason suffering significant emotional distress.

199.    By his acts and conduct, Mr. d'Hedouville intended to inflict significant emotional distress upon Mr. Mason.

200.    Mr. d'Hedouville acted with the intent of causing Mr. Mason emotional distress.

201.    Mr. d'Hedouville knew or should have known that his acts and conduct would likely result in Mr. Mason suffering significant emotional distress.

202.    The emotional distress suffered by Mr. Mason was severe and of a nature that no reasonable person could be expected to endure.

203.    As a result of the emotional distress intentionally inflicted by Mr. Massimo, Mr. McGillicuddy, Ms. Stolfa, Ms. Burt and Mr. d'Hedouville on Mr. Mason, Mr. Mason has suffered damages.

204.    This claim is for Intentional Infliction of Emotional Distress.

WHEREFORE, Plaintiff, Mr. Mason demands judgment against the Defendants in an amount that will fairly and adequately compensate Plaintiff, Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

A.  That Plaintiff be awarded compensatory damages;

B.  That Plaintiff be awarded emotional distress damages;

C.  That Plaintiff be awarded punitive damages;

D.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and

E.  That this Honorable Court award the Plaintiff such other relief as it may deem proper and

just.

## COUNT III

### (Negligent Infliction of Emotional Distress)

### As to the Defendants:  Massachusetts Department of Environmental Protection, Thomas Massimo, Daniel McGillicuddy, Margaret Stolfa, Laurie Burt, and Daniel d'Hedouville

205.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 204, inclusive, of this Complaint.

206.    Mr. Massimo acted in a manner which caused Mr. Mason to suffer significant emotional distress.

207.    The acts and conduct of Mr. Massimo in denying Mr. Mason his rights under FMLA were extreme and outrageous and beyond all bounds of decency.

208.    Mr. Massimo's acts and conduct caused Mr. Mason to suffer mental and emotional distress.

209.    Mr. McGillicuddy, Ms. Stolfa, Ms. Burt, and Mr. d'Hedouville acted in a manner which caused Mr. Mason to suffer significant emotional distress.

210.    The acts and conduct of Mr. McGillicuddy, Ms. Stolfa, Ms. Burt, and Mr. d'Hedouville were extreme and outrageous and beyond all bounds of decency.

211.    Mr. McGillicuddy's, Ms. Stolfa's, Ms. Burt's, and Mr. d'Hedouville's acts and conduct caused Mr. Mason to suffer mental and emotional distress.

212.    As a result of the emotional distress caused by Mr. Massimo, Mr. McGillicuddy, Ms. Stolfa, Ms. Burt, and Mr. d'Hedouville, Mr. Mason suffered damages.

213.    This claim is for the Negligent Infliction of Emotional Distress.

Wherefore, Plaintiff Mr. Mason demands that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiff, Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

A.  That Plaintiff be awarded compensatory damages;

B.  That Plaintiff be awarded emotional distress damages;

C.  That Plaintiff be awarded punitive damages;

D.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and

E.  That this Honorable Court award the Plaintiff order such other relief as it may deem proper and just.

## COUNT IV

### (Intentional Interference with Advantageous Business Relations)
### As to the Defendants: Thomas Massimo, Daniel McGillicuddy, Margaret Stolfa, Laurie Burt, and Daniel d'Hedouville

214.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 213, inclusive, of this Complaint

215.    Mr. Mason had a protected interest in an advantageous business relationship of employment with the DEP.

216.    Mr. Massimo knowingly interfered with Mr. Mason's advantageous business relationship with the DEP, among other things, by denying Mr. Mason his rights offered to him under

FMLA, by refusing to allow Mr. Mason to utilize his earned vacation and sick time, by treating Mr. Mason disparately based on his impairments, and by subjecting Mr. Mason to numerous adverse employment actions up to and including his termination.

217.    Mr. Massimo maliciously and unlawfully interfered with Mr. Mason's advantageous business relations through improper motive and means.

218.    Mr. Massimo engaged in the aforementioned conduct with spiteful and malicious intent and not for any legitimate business reason.

219.    Mr. d'Hedouville knowingly interfered with Mr. Mason's advantageous business relationship with the DEP, among other things, by subjecting Mr. Mason to disparate treatment on the basis of his disabilities, when Mr. d'Hedouville unfairly increased Mr. Mason's work load and subjected Mr. Mason to additional adverse employment actions up to and including his termination.

220.    Mr. d'Hedouville maliciously and unlawfully interfered with Mr. Mason's advantageous business relations through improper motive and means.

221.    Mr. d'Hedouville engaged in the aforementioned conduct with spiteful and malicious intent and not for any legitimate business reason.

222.    Ms. Stolfa, Ms. Burt, and Mr. McGillicuddy knowingly interfered with Mr. Mason's advantageous business relationship with the DEP, among other things, by subjecting Mr. Mason to disparate treatment on the basis of his disabilities, when they either failed or refused to allow Mr. Mason union representation after he asserted his Weingarten Rights during the November 2007 disciplinary meeting (which resulted in a Written Warning being issued against Mr. Mason), when they subjected Mr. Mason to additional adverse employment actions up to and including his termination.

223.    Ms. Stolfa, Ms. Burt, and Mr. McGillicuddy maliciously and unlawfully interfered with

Mr. Mason's advantageous business relations through improper motive and means.

224.    Ms. Stolfa, Ms. Burt, and Mr. McGillicuddy engaged in the aforementioned conduct with spiteful and malicious intent and not for any legitimate business reasons.

225.    As a result of the conduct described above, Mr. Mason suffered damages.

226.    This claim is for Intentional Interference with Advantageous Business Relations.

Wherefore, Plaintiff Mr. Mason demands that judgment be entered against Defendants in an amount that will fairly and adequately compensate Plaintiff, Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

   A.  That Plaintiff be awarded compensatory damages;
   B.  That Plaintiff be awarded emotional distress damages;
   C.  That Plaintiff be awarded punitive damages;
   D.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and
   E.  That this Honorable Court award the Plaintiff such other relief as it may deem proper and just.

## COUNT V
## (RETALIATION and INTERFERENCE with PROTECTED RIGHTS)
## As to the Defendants: Massachusetts Department of Environmental Protection, Thomas Massimo, Daniel McGillicuddy, Margaret Stolfa, Laurie Burt, and Daniel d'Hedouville

227.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 226, inclusive, of this Complaint.

228.    Mr. Mason engaged in protected activities, in or about November, 2007, when he

requested union representation pursuant to his Weingarten Rights .and again in or about December 2007, when Mr. Mason made multiple requests for FMLA leave.

229.    The DEP and Mr. Massimo retaliated against Mr. Mason and interfered with his protected rights, among other things, by treating him differently from his similarly-situated non-handicapped colleagues after Mr. Mason requested his Federally protected Weingarten Rights; again when he made multiple requests for leave under his Federally protected FMLA rights; by disciplining Mr. Mason without supporting evidence; and by terminating him in retaliation for exercising his Federally protected rights.

230.    Mr. McGillicuddy, Ms. Stolfa, Ms. Burt, and Mr. d'Hedouville retaliated against Mr. Mason and interfered with his protected rights, among other things, by treating him differently from his similarly-situated non-handicapped colleagues after Mr. Mason requested his Federally protected Weingarten Rights; again when he made multiple requests for leave under his Federally protected FMLA rights; by disciplining Mr. Mason without supporting evidence; and by terminating him in retaliation for exercising his Federally protected rights.

231.    As a result of the conduct alleged, Mr. Mason has suffered damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, and attorney's fees and costs.

Wherefore, Plaintiff Mr. Mason demands that judgment be entered against  Defendants in an amount that will fairly and adequately compensate Plaintiff, Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

    A. That Plaintiff be awarded compensatory damages (including lost wages and benefits, and damages for harm to his personal reputation;

    B. That Plaintiff be awarded emotional distress damages;

    C. That Plaintiff be awarded punitive damages;

D.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and

E.  That this Honorable Court award the Plaintiff such other relief as it may deem proper and just.

**COUNT VI**

**(INVASION OF PRIVACY M.G.L. c.214 § 1B)**

**As to the Defendants: Department of Environmental Protection and Thomas Massimo**

232.      Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 231, inclusive, of this Complaint.

233.      Under Massachusetts law, a person shall have the right against unreasonable substantial or serious interference with his privacy.

234.       By disclosing, without having obtained the consent of Mr. Mason, the disciplinary actions to which Mr. Mason was subjected by the DEP to Dr. Morris prior to Ms. Mason's medical examination by Dr. Morris for no legitimate business reason, Mr. Massimo and/or the DEP violated and invaded Mr. Mason's privacy.

235.      As a result of Mr. Massimo and/or the DEP's above-referenced conduct described in paragraph 234, Mr. Mason has suffered damages.

Wherefore, Plaintiff Mr. Mason demands that judgment be entered against  Defendants in an amount that will fairly and adequately compensate Plaintiff, Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

A.  That Plaintiff be awarded compensatory damages;

B.  That Plaintiff be awarded emotional distress damages;

C.  That Plaintiff be awarded punitive damages;

D.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and

E.  That this Honorable Court award the Plaintiff such other relief as it may deem proper and just.


## COUNT VII
## (CONVERSION)
### As to the Defendant: Department of Environmental Protection

236.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 235, inclusive, of this Complaint.

237.     Subsequent to Mr. Mason's termination from the DEP, Mr. Mason requested the return of various personal belongings, including but not limited to:  ABA - Amending CERCLA;  ABA - Basic Practice on Clean Air Act;  ABA - RCRA Manual; ABA - Basic Practice on TSCA; ABA - Brownfields Basic Guide in three (3) volumes; ABA - Environmental Aspects to Conveyances; ABA - Environmental Litigation; MCLE - Basic Bankruptcy Guide; MCLE - Environmental Permitting and Litigation; MCLE - Massachusetts Environmental Law Guide two (2) volumes; EPA - Guides to Clean Air Act; Superfund; RCRA; a portable CD player; a digital recorder; and numerous personal files, all of which are the personal property of Mr. Mason.

238.     The DEP either failed or refused to allow Mr. Mason to personally retrieve the above-referenced personal property described in paragraph 237.

239.     After Mr. Mason made numerous requests to the DEP, the DEP either failed or refused to return to Mr. Mason the above-referenced items of personal property described in paragraph 237.

240.     The DEP continues to exercise dominion and control over Mr. Mason's personal property described in paragraph 237.

241.     Upon information and belief, the DEP has either appropriated or destroyed the

above-mentioned personal property of Mr. Mason described in paragraph 237.

242.     The DEP has deprived Mr. Mason, the rightful owner, of the above-mentioned items of personal property.

243.     To date, after Mr. Mason's numerous demands for the return of his personal property, the DEP has either failed or refused to return it to Mr. Mason.

244.     As a result of the DEP's conduct, Mr. Mason has suffered damages.

Wherefore, Plaintiff Mr. Mason demands that judgment be entered against Defendant in an amount that will fairly and adequately compensate Plaintiff, Mr. Mason for lost wages, conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

A.  That Plaintiff be awarded compensatory damages;
B.  That Plaintiff be awarded actual damages (the value of Mr. Mason's personal property);
C.  That Plaintiff be awarded emotional distress damages;
D   That Plaintiff be awarded punitive damages;
E.  That Plaintiff be awarded attorney's fees, cost of suit and interest; and
F.  That this Honorable Court award the Plaintiff such other relief as it may deem proper and just.

I, Thomas Mason, Plaintiff, say, upon my oath that I have read the above Complaint, and that the allegations contained therein are true to the best of my knowledge and belief.

Date: December 4, 2009                    /s/ Thomas Mason

                                          Thomas Mason

Respectfully submitted,

Thomas Mason,

By his Attorney

/s/Jeffrey R. Mazer_____
Counsel for Plaintiffs
Jeffrey R. Mazer
BBO#647110
Mazer Law Group, LLC
220 Broadway, Suite 205
Lynnfield, MA 01940
(781) 596-8604

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on each claim asserted or hereafter asserted in the Complaint, and on each defense asserted or hereafter asserted by any Defendants.

Dated:

Respectfully submitted,

Thomas Mason
By his Attorneys,

_____

Jeffrey R. Mazer, Esq.

The Mazer Law Group, LLC

BB0 # 647110

(781) 596-8604

Deirdre M. Clegg, Esq.

BB0# 665204

(617) 974-7774

220 Broadway, Suite 205

Lynnfield, Ma 01940