UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS MASON,            *
                                  *
          Plaintiff,      *
                                  *
      v.                 *          Civil Action No. 09-12078-JLT
                                  *
MASSACHUSETTS DEPARTMENT   *
OF ENVIRONMENTAL PROTECTION,  *
et al.,                 *
                                  *
          Defendants.    *

MEMORANDUM

March 29, 2011

TAURO, J.

I.     Introduction

This action arises out of Thomas Mason's employment at the Massachusetts Department of Environmental Protection (the "DEP"). Mason ("Plaintiff") has brought a suit against the DEP and various individuals who are or were employed by the DEP ("the Individual Defendants"). Plaintiff's Complaint alleges, among other counts, that the DEP and the Individual Defendants violated the Family and Medical Leave Act of 1993 ("FMLA").[1] Presently at issue is the Individual Defendants' Motion to Dismiss [#4] and the DEP's Motion to Dismiss [#8]. For the following reasons, the DEP's Motion is ALLOWED and the Individual Defendants' Motion is ALLOWED IN PART and DENIED IN PART.

II.    Background[2]

---

[1] Verified Compl. & Demand for Jury Trial ¶¶ 169–85 [#1] [hereinafter Compl.].

[2] Because the issues analyzed here arise in the context of two motions to dismiss, this court presents the facts as they are related in Plaintiff's Complaint, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most

A.     Factual Background

From November 5, 1995 to January 31, 2008, Plaintiff was an employee of the DEP.[3]

While employed at the DEP, Plaintiff suffered from asthma, hearing problems, diverticulitis,

stress/hypertension, and anxiety.[4]  These conditions interfere with Plaintiff's major life functions

of sleeping, concentrating, interacting with others, learning, and working.[5]  Additionally, Plaintiff

was diagnosed with chronic depression in 2003 and with "high blood pressure/hypertension" in

2005.[6]

In the summer of 2007, the DEP increased Plaintiff's workload, responsibilities, and

duties, thereby exacerbating Plaintiff's condition.[7]  Around August of 2007, Plaintiff informed

Defendant d'Hedouville and "DEP Management" of his specific medical impairments, that the

increased responsibility at work was exacerbating his condition, and that his impairment was

interfering with his ability to work.[8]  Plaintiff sought treatment for these conditions in September

and October of 2007.[9]  In particular, he was hospitalized on October 3, 2007 and October 6,

favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting
Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

   [3] Compl. ¶¶ 17–18, 160 [#1].

   [4] Compl. ¶ 38 [#1].

   [5] Compl. ¶ 39 [#1].

   [6] Compl. ¶¶ 49, 51 [#1].

   [7] Compl. ¶¶ 54, 63, 65, 72 [#1].

   [8] Compl. ¶ 66 [#1].  Plaintiff again informed Defendant d'Hedouville of this information
when Plaintiff was hospitalized.  Compl. ¶ 77 [#1].

   [9] Compl. ¶¶ 74–75 [#1].

2007.[10]  The DEP knew or should have known about Plaintiff's hospitalization.[11]  Plaintiff used

his accrued sick and vacation time when absent from work.[12]  Despite Plaintiff's hospitalization

and reporting of his medical impairments, Defendant d'Hedouville did not inform Plaintiff of his

rights under the FMLA.[13]  The DEP allegedly subjected Plaintiff to additional adverse

employment actions, such as issuing Plaintiff a written warning on November 16, 2007 allegedly

because of Plaintiff's impairments.[14]

On November 17, 2007, the DEP convened a meeting about Plaintiff's work performance,

at which Plaintiff alleges that he was denied his Weingarten rights.[15]  On November 28, 2007,

based upon information gathered at the November 17 meeting, the DEP suspended Plaintiff for

five business days for lack of veracity, poor work performance, and insubordination.[16]  While

serving his suspension, on November 29, 2007, Plaintiff submitted a medical note from a nurse

---

[10] Compl. ¶¶ 75, 78–79 [#1]

[11] Compl. ¶ 80 [#1].

[12] Compl. ¶ 76 [#1].

[13] Compl. ¶ 81 [#1].

[14] Compl. ¶¶ 82–87 [#1].

[15] Compl. ¶¶ 94–95 [#1].  Defendants Burt, Massimo, McGillicudy, Stolfa, and d'Hedouville were present at the meeting.  Compl. ¶ 97 [#1].  Defendant Burt was the Commissioner of the DEP and Defendant McGillicudy was the Deputy Commissioner for Administration at the DEP.  Compl. ¶¶ 4–5 [#1].  Defendant Stolfa was General Counsel at the DEP.  Compl. ¶ 6 [#1].  Weingarten rights refer an employee's entitlement to union representation at any meeting at which the employee reasonably believes that he or she will be disciplined.  See infra note 52 and accompanying text.

[16] Compl. ¶ 110 [#1].  The DEP "cannot provide any documentary evidence" that the suspension was directly related to the allegations of Plaintiff's lack of veracity, poor work performance, and insubordination.  Compl. ¶ 111 [#1].

practitioner indicating that Plaintiff had been diagnosed with high blood pressure, dehydration, diarrhea, and significant weight loss.[17]  On December 2, 2007, Plaintiff requested information regarding his FMLA rights from Defendant d'Hedouville and he forwarded the request to Defendants Massimo and Stolfa.[18]  The DEP, in particular Defendant Massimo, denied Plaintiff leave under the FMLA.[19]

On December 5, 2007, Plaintiff submitted a letter to Defendant Massimo.[20]  The letter included a medical note informing the DEP that Plaintiff needed to take a leave of absence to treat his disabilities rather than return from his suspension.[21]  Plaintiff also provided, on December 6, 2007, a "Certification of Health Care Provider" ("Certification") executed by his Nurse Practitioner "Smith" ("NP Smith"), mentioning Plaintiff's inability to work "relative to" Plaintiff's "serious health condition."[22]  On December 11, 2007, Defendant Massimo requested details about Plaintiff's ailment and noted that the Certification was not signed by a medical doctor.[23]  On December 12, 2007, NP Smith notified the DEP that Plaintiff was diagnosed with high blood

---

[17] Compl. ¶¶ 112–13 [#1].

[18] Compl. ¶¶ 114–15 [#1].

[19] Compl. ¶ 116 [#1].

[20] Compl. ¶ 117 [#1].

[21] Compl. ¶¶ 117–19 [#1].  Because Plaintiff was required to return to work on December 6, 2007 unless his absence was excused, the medical note purportedly excused Plaintiff from reporting to work.  Comp. ¶ 119 [#1].

[22] Compl. ¶ 120 [#1].

[23] Compl. ¶¶ 121–22 [#1].

pressure, gastroenteritis, and sleep deprivation.[24]  NP Smith also later notified the DEP that the

stress level caused by the denial of FMLA leave would worsen Plaintiff's condition.[25]  After

multiple communications regarding the documentation for Plaintiff's requested leave, the DEP

denied Plaintiff's request on December 23, 2007, because his request was not signed by a medical

doctor, it failed to discuss the nature of Plaintiff's medical condition, and it failed to include the

reasons why the medical leave was necessary.[26]

The DEP arranged an appointment for Plaintiff to obtain a second medical opinion with

Dr. Morris,[27] at which the doctor stated to Plaintiff, "I understand that you have been disciplined

twice."[28]  At the appointment, Plaintiff refused to sign a medical release.[29]  Despite this fact, Dr.

Morris provided his medical notes to the DEP.[30]  On January 23, 2008, the DEP conducted a Pre-

Termination hearing, at which Defendant Massimo was the Hearing Officer.[31]  In response to

Plaintiff's complaint of Defendant Massimo's bias (given his involvement in Plaintiff's FMLA

---

[24] Compl. ¶ 124 [#1].

[25] Compl. ¶ 128 [#1].

[26] Compl. ¶ 130 [#1].  Plaintiff alleges that the DEP has a practice of accepting medical documentation executed by Nurse Practitioners when an employee requests leave pursuant to the FMLA.   Compl. ¶ 131 [#1].

[27] Plaintiff alleges Dr. Morris was commonly chosen by the DEP to perform second medical opinions.  Compl. ¶ 146 [#1].

[28] Compl. ¶¶ 133, 135, 148 [#1].

[29] Compl. ¶¶ 142–44 [#1].

[30] Compl. ¶¶ 152 [#1].

[31] Compl. ¶¶ 153, 155 [#1].

denial), "upper level management" at the DEP refused to provide Plaintiff with an appeal.[32]

On January 31, 2008, despite the Certification executed by NP Smith and that Plaintiff's impairments met the criteria for "serious health condition[s]" under the FMLA, Plaintiff was terminated based (at least partly) on Dr. Morris's second medical opinion.[33]

B.    Procedural Background

Plaintiff filed a Complaint on December 4, 2009, naming the DEP along with the Individual Defendants.[34]  The Complaint contained seven counts: (I) violation of Plaintiff's FMLA rights (namely, a violation of the personal medical leave provision by denying Plaintiff leave for a "serious health condition"); (II) intentional infliction of emotional distress; (III) negligent infliction of emotional distress; (IV) interference with advantageous business relations (only as to the Individual Defendants); (V) retaliation and inference with protected rights; (VI) invasion of privacy under Massachusetts General Laws, chapter 214, section 1B (only as to the DEP and Defendant Massimo); and (VII) conversion (only as to the DEP).[35]  Plaintiff sought punitive damages.[36]

The Individual Defendants and the DEP have filed separate Motions to Dismiss.

III.    Discussion

---

[32] Compl. ¶¶ 155, 157 [#1].

[33] Compl. ¶¶ 154, 160–61 [#1].  Defendant Massimo recommended Plaintiff's termination to Defendant McGillicuddy.  Compl. ¶¶ 154 ,158 [#1].

[34] The Individual Defendants are Laurie Burt, Daniel d'Hedouville, Thomas Massimo, Daniel McGillicuddy, and Margaret Stolfa.

[35] Compl. ¶¶ 169–244 [#1].

[36] Compl. ¶ 244 [#1].  Plaintiff does not seek injunctive relief.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that, if taken as true, demonstrate a plausible claim for relief.[37] This court addresses the DEP's Motion to Dismiss and the Individual Defendant's Motion to Dismiss, in that order.

A.      The DEP's Motion to Dismiss[38]

1.      Count I Is Barred Against the DEP by the Eleventh Amendment

The Eleventh Amendment prevents private individuals from suing non-consenting states in federal court.[39] This immunity also applies to "arms" of the state.[40] Although Congress has the power to abrogate that Eleventh Amendment immunity, such power may only be validly exercised if Congress both (a) "'unequivocally intends to do so'" and (b) "'act(s) pursuant to a valid grant of constitutional authority,'" such as the authority granted by Section 5 of the Fourteen Amendment.[41]

The FMLA entitles eligible employees to a certain amount of unpaid leave per year in four clearly specified situations: (1) the birth of a child; (2) the adoption of a child or placement of a

---

[37] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–58 (2007).

[38] The following discussion does not entail Plaintiff's counts as they relate to the Individual Defendants.

[39] Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see U.S. Const. Amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another States, or by Citizens or Subjects of any Foreign State.").

[40] See PRASA v. M&E, 506 U.S. 139, 146–47 (1993); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curium). See generally De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 121 (1991) (discussing coverage of the Eleventh Amendment).

[41] Garrett, 531 U.S. at 363 (quoting Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000)).

foster child; (3) the need to care for a parent, child or spouse with a serious health condition (the "family-care" leave provision); and (4) the inability to work due to the employee's own serious health condition (the "self-care" or "personal medical" leave provision).[42]  Only the personal medical leave provision is at issue here.[43]

The First Circuit held, in Laro v. New Hampshire,[44] that "the personal medical leave provision of the FMLA does not exhibit a sufficient congruence to the prevention of unconstitutional state discrimination to validly abrogate the states' Eleventh Amendment immunity."[45]  As a result, no private action for monetary damages may lie against state employers for violation of the personal medical leave  provision of the FMLA.

Two years after Laro, the Supreme Court held that Congress validly abrogated sovereign immunity such that state employees may maintain claims in federal court for their employers' failure to comply with the family-care provision of the FMLA.[46]  The Court, however, did not address whether sovereign immunity is similarly abrogated for claims of a violation of the personal medical leave provision.[47]  The prevailing law in the First Circuit, therefore, is that the Commonwealth retains Eleventh Amendment immunity from claims under the personal medical

---

[42] 29 U.S.C. § 2612(a)(1)(A)–(D).

[43] See Compl. ¶¶ 112–61 [#1].

[44] 259 F.3d 1 (1st Cir. 2001).

[45] Id. at 16 (explaining that the personal medical leave provision of the FMLA "on its face has no direct connection to preventing unconstitutional gender discrimination by state employers").

[46] Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 725 (2003).

[47] See id.

leave provision of the FMLA.[48]

Because (1) the DEP is an agency of the Commonwealth[49] and (2) Plaintiff's FMLA claim against the DEP is based solely upon Plaintiff's exercise of the personal medical leave provision, Count I is barred as against the DEP.

2.   Count V Against the DEP, Alleging Retaliation, Fails to State a Claim

In Count V, Plaintiff alleges "retaliation and interference with protected rights."[50] Construing the language of Count V in the light most favorable to Plaintiff, he appears to raise two potential bases for his allegation of retaliation: (a) the exercise of his Weingarten rights and (b) the exercise of his FMLA rights.[51]   Neither is a sufficient basis to allow Plaintiff's claim to survive.

---

[48] See Wilson v. Exec. Office of Health & Human Servs., 606 F. Supp. 2d 160, 164 (D. Mass. 2009).

[49] DEP's Mot. Dismiss, 5 [#8]; see also 29 C.F.R. § 825.108(b) (explaining that one of the ways to determine whether an entity is a "public" agency is whether the appointment of the "chief administrative officer" is subject to approval by an elected official).  Plaintiff does not contest that the DEP is an agency of the Commonwealth.  At least one other district court in the First Circuit has concluded that DEP officials acting in their official capacity are entitled to Eleventh Amendment immunity.  See Sierra Club v. Larson, 769 F. Supp. 420, 424 (D. Mass. 1991) (finding that the Commissioner of the DEP was entitled to Eleventh Amendment immunity).  Such a conclusion logically entails that the DEP is a state agency also entitled to Eleventh Amendment immunity.  Plaintiff, moreover, has not argued that the DEP is not an organic part of the Commonwealth's central government.  See Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939–40 (1st Cir. 1993) (citing Ainsworth Aristocrat Int'l Party Ltd. v. Tourism Co. of P.R., 818 F.2d 1034, 1037 (1st Cir. 1987)).

[50] Compl. ¶¶ 227–31 [#1].

[51] In Count V, Plaintiff also references the DEP having treated him differently from his "similarly-situated [sic] non-handicapped colleagues."  Compl. ¶¶ 229–30 [#1].  Despite this language, Plaintiff has not pled a cause of action for handicap discrimination.  Moreover, any such claim would be premature at this point because, as Plaintiff alleges, he has not yet exhausted his administrative remedies as would be required to bring such a claim.  Compl. ¶ 8 [#1].

Under the National Labor Relations Act ("NLRA"), an employee under a union contract whose employer is subject to the NLRA has <u>Weingarten</u> rights: the employee is entitled to union representation at any meeting at which the employee reasonably believes that he or she will be disciplined.[52]

The DEP highlights that any <u>Weingarten</u> rights that Plaintiff might have would arise from his status as a union employee under his union's collective bargaining agreement ("CBA") with the DEP, rather than an independent employment contract with the DEP.[53] The DEP also points out that only Plaintiff's union may enforce those rights by asserting and exhausting the applicable grievance procedures in the CBA.[54] Moreover, the applicable grievance procedures must be exhausted before relief is sought in court.[55] Plaintiff does not dispute any of these contentions.

Given the above understanding, Plaintiff has failed to identify any legal grounds for a retaliation claim on the basis of <u>Weingarten</u> rights. Plaintiff has not shown that he is the type of

---

[52] <u>See</u> <u>NLRB v. J. Weingarten, Inc.</u>, 420 U.S. 251, 252–53 (1975).

[53] <u>Cf.</u> <u>Fuentes v. Hampden Cnty. Sheriff's Dep't</u>, No. 02-301373-MAP, 2003 U.S. Dist. LEXIS 25565, at *9–17 (D. Mass. June 30, 2003), <u>accepted in part and rejected in part on other grounds</u>, 2004 U.S. Dist LEXIS 12053, at *4 n.2 (D. Mass. June 25, 2004) (agreeing with Magistrate Judge on relevant grounds); <u>Mass. Corr. Officers Federated Union v. Mass. Labor Relations Comm'n</u>, 424 Mass. 191, 193–95 (1997).

[54] <u>Cf.</u> <u>Fuentes</u>, 2003 U.S. Dist. LEXIS 25565, at *9–17; <u>Mass. Corr. Officers Federated Union</u>, 424 Mass. at 193–95.

[55] <u>See</u> <u>Johnston v. Sch. Comm. of Watertown</u>, 404 Mass. 23, 25 (1989) (explaining that failure to pursue contractual grievance procedures bars suit against the employer); <u>Balsavich v. Local 170, Int'l Bhd. of Teamsters</u>, 371 Mass. 283, 286–87 (1976) ("Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct [sic] to court for redress against the employer . . . [but] must initiate the grievance procedures as the contract provides . . . ." (citations omitted)); <u>Martin v. Sch. Comm. of Natick</u>, 395 Mass. 461, 469 (1985) (writing that once a grievance procedure is initiated, a statutory remedy may not be elected short of exhausting the grievance procedure).

an employee entitled to Weingarten rights.  Moreover, Plaintiff has not shown that his union

either asserted Plaintiff's rights or exhausted any applicable grievance procedures.  Plaintiff

therefore does not have a private right of action to enforce Weingarten rights.[56]

Insofar as Plaintiff claims retaliation based upon his exercise of his FMLA rights under the

personal medical leave provision,[57] his claim is also barred by the Eleventh Amendment.  If

Congress cannot validly abrogate sovereign immunity for claims based on the personal medical

leave provision of the FMLA because such claims are not related to the prevention of

unconstitutional state discrimination, it must follow that Congress is similarly unable to abrogate

sovereign immunity for retaliation claims based upon that same personal medical leave

provision.[58]  Plaintiff does not dispute this argument.  Under any reading of Plaintiff's retaliation

---

[56] Moreover, Plaintiff's counsel appeared to concede at the Motion Hearing that his client's retaliation claim was not based on any Weingarten rights.

[57] See Compl. ¶¶ 227–31 [#1].  Requesting leave is an "FMLA-protected right, see 29 C.F.R. § 825.220(a)(1), for which retaliation conceivably could be wrongful even where the leave itself was unprotected."  Tayag v. Lahey Clinic Hosp., Inc., No. 10-1169, 2011 U.S. App. LEXIS 1697, at *12–13 (1st Cir. Jan. 27, 2011) (citing Colburn v. Parker Hannifin/Nichols Portland Div. 429 F.3d 325, 336 n.10 (1st Cir. 2005)) (affirming summary judgment against plaintiff because her discharge was for taking improper or unprotected leave, rather than for filing a leave request).

[58] No case in the First Circuit has addressed this proposition.  But various other district courts have agreed with this theory.  See, e.g., Braden v. Cnty. of Wash., No. 08-574, 2008 U.S. Dist. LEXIS 985111, at *1, 17 (W.D. Pa. Dec. 5, 2008) (allowing a motion to dismiss of an FMLA retaliation claim because of Eleventh Amendment immunity); McDermott v. Blackwell, No. C2-CV-04-721, 2006 U.S. Dist. LEXIS 10705, at *10–14 (S.D. Ohio Mar. 10, 2006) (allowing a motion to dismiss a retaliation claim based upon the personal medical leave provision of the FMLA because of the defendants' immunity against suit in their official capacities); Solley v. Big Spring States Hosp., No. 1:03-CV-094-C, 2004 U.S. Dist. LEXIS 12958, at *13–14 (N.D. Tex. July 12, 2004) (allowing summary judgment of personal medical leave FMLA retaliation claim because of Eleventh Amendment immunity (citing Hale v. Mann, 219 F.3d 61 (2d Cir. 2000))); Collier v. Clayton Cnty. Cmty. Serv. Bd., 236 F. Supp. 2d 1345, 1380 (N.D. Ga. 2002) (allowing summary judgment for defendants on plaintiff's personal medical leave FMLA retaliation claim because of Eleventh Amendment immunity).

claim, therefore, Count V fails to state a claim upon which relief can be granted and must also be dismissed.

### 3. Plaintiff's State Law Claims Against the DEP Are Barred

#### a. Eleventh Amendment

All of Plaintiff's state law claims (Counts II, III, VI, and VII) against the DEP, a state agency, are barred by the Eleventh Amendment. The Eleventh Amendment precludes suits in federal court against non-consenting states, state agencies, and state officials sued in their official capacities.[59] The bar applies "regardless of whether the suit seeks damages or injunctive relief."[60] All of Plaintiff's state law claims are therefore barred by the Eleventh Amendment.

#### b. The Massachusetts Tort Claims Act Bars Counts II, III, VI, and VII Against the DEP

Plaintiff's state law claims are also barred for other reasons. Counts II, VI, and VII state intentional torts: intentional infliction of emotional distress, invasion of privacy, and conversion, respectively.[61] All three claims are barred against the DEP by the Massachusetts Tort Claims Act ("MTCA") because Section 10(c) of Chapter 258 of the Massachusetts General Laws provides that the Commonwealth cannot be held liable for any claim arising out of an intentional tort.[62]

---

[59] See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 70–71 (1989).

[60] Pennhurst State Sch. & Hosp. v. Haldeman, 465 U.S. 89, 104 (1984).

[61] Compl. ¶¶ 186–204, 232–44 [#1].

[62] G. L. c. 258, § 10 (c). Intentional infliction of emotional distress and invasion of privacy are considered tort claims subject to the MTCA. See id.; Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 282–86 (1985). Although conversion is not enumerated in Section 10(c), it constitutes an intentional tort and is barred under the MTCA. Kelley v. LaForce, 288 F.3d 1, 13 (1st Cir. 2002) (citing Rezendez-Walsh v. City of Boston, 95-3707-E, 1996 Mass.

Accordingly, Counts II, VI, and VII fail as against the DEP and must be dismissed.

Count III alleges negligent infliction of emotional distress against the DEP.[63] The MTCA, in providing a limited waiver of sovereign immunity for tort claims, outlines careful parameters for the Commonwealth's liability. In particular, the law provides that a "civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."[64] Section Four's specification of presentment is a "statutory prerequisite; compliance is a condition precedent to the assertion of a right created by the act."[65] A plaintiff's failure to present her claim in accordance with Section Four precludes bringing a claim for injuries under the MTCA.[66] Here, Plaintiff cannot demonstrate that the MTCA's presentment requirement was met. Plaintiff does not allege that he presented his claim. Neither the Attorney General's office nor the Executive Office of Energy and Environmental Affairs have any record of Plaintiff having presented his

---

Super. LEXIS 30, at *6 (Nov. 25, 1996) (citing Connerty v. Metro. Dist. Comm'n, 398 Mass. 140, 149 n.8 (1986))).

[63] Compl. ¶¶ 205–13 [#1].

[64] G. L. c. 258, § 4.

[65] George v. Town of Saugus, 394 Mass. 40, 41–42 (1985) (citations omitted). The purpose of the requirement is to afford the governmental entity an opportunity "make timely investigation in order to disprove fraudulent claims and to give it a chance to settle meritorious claims out of court." Id. at 44 (citations and internal quotation marks omitted).

[66] See Weaver v. Commonwealth, 387 Mass. 43, 47–48 (1982) (holding that presentment must be made in "strict compliance with the statute").

claim.[67]  As a result, Count III is barred as against the DEP and is dismissed.[68]

B.      The Individual Defendants' Motion to Dismiss

The Individual Defendants claim that Plaintiff has failed to state a claim on either of his

federal counts: Count I, alleging a violation of the FMLA's personal medical leave provision; and

Count V, alleging retaliation against Plaintiff for attempting to exercise his FMLA rights.  The

Individual Defendants argue that the Eleventh Amendment bars this suit against them in their

official capacities and that under the FMLA they are not liable in their individual capacities.  The

Individual Defendants additionally argue that they are entitled to qualified immunity.  This court

considers the Individual Defendants' arguments in seriatim.

1.      Eleventh Amendment Immunity for Official Capacity Suits[69]

The Individual Defendants contend that state officials sued in their official capacities are

---

[67] See DEP's Mot. Dismiss, Ex. A [#8] (containing Affidavit of Meghan O'Brien); DEP's Mot. Dismiss, Ex. B [#8] (containing Affidavit of James Crowley).

[68] Moreover, Counts II and III, alleging intentional and negligent infliction of emotional distress, respectively, Compl. ¶¶ 186–213 [#1], are likely subject to the exclusivity provision of the Workmen's Compensation Act ("WCA"), G. L. c. 152, § 24.  The WCA provides the exclusive remedy for an employee's claim of personal injuries against an employer if the injury arises out of and in the course of employment.  Foley v. Polaroid Corp., 381 Mass. 545, 548–49 (1980); see G. L. c. 152, § 24.  Actions for intentional and negligent infliction of emotional distress against an employer are personal injuries for which an employee's recovery may only be sought through the WCA, not in tort.  See, e.g., Green v. Wyman-Gordon Co., 422 Mass. 551, 560–62 (1996); Evans v. T.J. Maxx, Marmaxx, Inc., No. MICV2003-04501-A, 2005 Mass. Super. LEXIS 41, at *11 (Mass. Sup. Ct. Feb. 15, 2005).

[69] Although Plaintiff's counsel indicated that the Individual Defendants were being sued only in their individual capacities, this court, out of an abundance of caution, nonetheless addresses the arguments raised by the Parties in their motions and supporting memoranda.

entitled to immunity under the Eleventh Amendment.[70]

The Eleventh Amendment has been construed by the Supreme Court to bar an action for damages against a state official because it is a suit against the official's office and "'no different from a suit against the State itself.'"[71]  Congress can, however, abrogate states' and state officials' Eleventh Amendment immunity if Congress both (a) makes its intention "unmistakably clear in the language of the statute" and (b) acts pursuant to a "valid exercise of its power under § 5 of the Fourteenth Amendment."[72]  Congress has satisfied the first of these two criteria by providing that employees may seek damages under the FMLA "against any employer (including a public agency) in any Federal or State court of competent jurisdiction."[73]  The First Circuit has held that Congress has failed to satisfy the second criterion, at least with reference to the personal medical leave provision of the FMLA that Plaintiff invokes.[74]

The First Circuit has held that the FMLA's personal medical leave provision "does not exhibit a sufficient congruence to the prevention of unconstitutional state discrimination to validly abrogate" the Eleventh Amendment immunity of the "states as employers from private damages

_____

[70] Def. Massimo, McGillicuddy, Burt, Stolfa, & d'Hedouville's Mem. Supp. Their Mot. Dismiss, 6 [#5] [hereinafter Indiv. Defs.' Mem. Supp. Mot. Dismiss].

[71] Printz v. United States, 521 U.S. 898, 930–31 (1997) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).

[72] Hibbs, 538 U.S. at 726 (citations omitted).

[73] 29 U.S.C. § 2617(a)(2).

[74] See Laro, 259 F.3d at 16.  Only the personal medical leave provision is at issue here. See Compl. ¶¶ 112–61 [#1].

actions."[75]

Plaintiff's arguments referencing Judge Lipez's dissent in <u>Laro</u> are unavailing.[76]  It is true

that the Supreme Court determined in <u>Hibbs</u> that the family-care leave provision of the FMLA

represents a valid abrogation of states' Eleventh Amendment immunity under Section 5 of the

Fourteenth Amendment.[77]  But the First Circuit's holding in <u>Laro</u>—that the Commonwealth's

Eleventh Amendment immunity has not been validly abrogated by Congress's enactment of the

personal medical leave provision of the FMLA[78]—remains binding here.[79]  The holding in <u>Laro</u>

has "not been modified by, let alone presented to, the First Circuit since the Supreme Court's

decision in <u>Hibbs</u>."[80]

Here, insofar as Plaintiff brings this claim against the Individual Defendants in their official

capacities, this claim is barred by the Eleventh Amendment.  Additionally, insofar as Plaintiff

claims retaliation based upon the exercise of his FMLA rights under the personal medical leave

---

[75] <u>Laro</u>, 259 F.3d at 16–17 (explaining that the personal medical leave provision bears "no direct connection to preventing unconstitutional gender discrimination by state employers").  The First Circuit noted that the only issue before it concerned the "availability of private damages <u>against states</u> under the final provision, 29 U.S.C. § 2612(a)(1)(D), which affords an employee the right to unpaid leave to inability to work due to his or her own serious health condition."  <u>Id.</u> at 9 & n.6 (explaining only that the entire FMLA was not at issue).  But a suit against a state employee in his official capacity is considered a suit against the state.  <u>See</u> <u>supra</u> note 59, 71 and accompanying text.

[76] <u>See</u> Pl.'s Mem. Law Supp. Opp. Defs.' Mot. Dismiss, 4 [#10].

[77] <u>See</u> Pl.'s Mem. Law Supp. Opp. Defs.' Mot. Dismiss, 3 [#10] (citing <u>Hibbs</u>, 538 U.S. at 724–25).

[78] 29 U.S.C. § 2612(a)(1)(D).

[79] <u>See</u> <u>Wilson</u>, 606 F. Supp. 2d at 164.

[80] <u>Id.</u>

16

provision,[81] this claim against the Individual Defendants in their official capacities is also barred by the Eleventh Amendment.[82]

### 2. State Officials May Be Liable in Their Individual Capacities

The Individual Defendants argue that if they have been sued in their individual capacities, then they are still not liable under the personal medical leave provision of the FMLA.[83]

### a. Plaintiff Has Sued the Individual Defendants in Their Individual Capacities

As a preliminary matter, the Individuals Defendants argue that Plaintiff's failure to indicate that the suit is against the Individual Defendants in their individual capacities means that this court should presume that the suit is an official-capacity suit.[84] Contrary to the Individual Defendants' assertion,[85] the First Circuit has addressed the issue and has adopted a "course of proceedings" test.[86] Under this test, the court examines the "substance of the pleadings and the course of

---

[81] See Compl. ¶¶ 227–31 [#1].

[82] See supra note 58 and accompanying text.

[83] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 10–13 [#5].

[84] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 10 [#5].

[85] See Indiv. Defs.' Mem. Supp. Mot. Dismiss, 10 [#5].

[86] Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004) (discussing the test in the context of a case brought under 42 U.S.C. § 1983). District courts in the First Circuit have applied the course of proceedings test to complaints alleging various other constitutional and statutory violations. See, e.g., Wholey v. Tyrell, 567 F. Supp. 2d 279, 285 (D. Mass. 2008) (applying the course of proceedings test in the context of alleged constitutional and statutory violations); Mulero v. Colon, No. 05-2346 (DRD/BJM), 2007 U.S. Dist. LEXIS 48018, at *12 (D.P.R. Feb. 27, 2007) (applying the test in the context of an ADA Title I claim).

proceedings in order to determine whether the suit is for individual or official liability."[87] The underlying inquiry is whether a plaintiff's "intention to hold a defendant personally liable can be ascertained fairly."[88] Relevant factors include the nature of a plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint.[89]

Much like in Powell, the course of proceedings here gave the Individual Defendants fair notice that they were being sued in their individual capacities. First, Plaintiff's Complaint contained a prayer for punitive damages.[90] Although many courts have held that punitive damages cannot be recovered in an FMLA action,[91] at the least the mention of punitive damages would likely charge the Individual Defendants with notice of an individual-capacity suit. Second, the Individual Defendants raised a qualified immunity defense,[92] which indicates that the Individual Defendants interpreted Plaintiff's action as being against them personally.[93] Moreover, Plaintiffs's counsel even confirmed at a February 17, 2011 Motion Hearing in front of this court

---

[87] Powell, 391 F.3d at 22 (quoting Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993) (internal quotation marks omitted)).

[88] Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)).

[89] Id.

[90] Compl. ¶ 185 [#1].

[91] See, e.g., Lufkin v. E. Me. Med. Ctr., 401 F. Supp. 2d 145, 145–46 (D. Me. 2005) (striking a claim for punitive damages under the FMLA, collecting cases, and noting that the "First Circuit has not yet spoken directly on the issue" but "other circuits" have "uniformly" held that the FMLA does not "permit recovery for non-economic compensatory damages").

[92] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 13 [#5].

[93] See Powell, 391 F.3d at 23.

that Plaintiff was suing the Individual Defendants in their individual capacities, not in their official capacities.

b.     The Relevant FMLA Background

The next issue is whether the Individual Defendants, who are employees and supervisors for a public agency, are individually liable for violations of the FMLA.[94]  The Individual Defendants argue that the FMLA's language only applies to employers and that they are not liable because they are not employers under the FMLA.[95]

Resolution of this legal question depends on the FMLA's definition of "employer," which reads as follows:

> (4)  Employer.  (A) In general.  The term "employer"—
>> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>>> (ii) includes—
>> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>> (II) any successor in interest of an employer;
>>> (iii) includes any "public agency", as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)); and
>> (iv) includes the General Accounting Office [Government Accountability Office] and the Library of Congress.[96]

Because the individual liability provision (clause (ii)(I)) is separate from the provision which includes public agencies (clause (iv)), it is sharply contested whether the FMLA's definition of

---

[94] For the purposes of this decision, this court will follow the practice of other courts and use the terms "public officials," "supervisors," and "public employees" (and variations thereof) interchangeably.  See, e.g., Modica v. Taylor, 465 F.3d 174, 184 (5th Cir. 2006).

[95] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 10–13 (citing 29 U.S.C. § 2617(a)(1)).

[96] 29 U.S.C. § 2611(4)(A).

"employer" applies to supervisors of public agencies.

The Supreme Court and the First Circuit have yet to directly address this issue.[97] District courts within the First Circuit have differed in their outcomes.[98] But the decisions of the other courts within the First Circuit are not entirely on point for the purposes of this decision. The rationale for those cases is slightly removed from the debate here concerning whether the FMLA attaches individual liability to public employees.[99]

In the decisions that directly address the matter, there is a nationwide split among both Courts of Appeals and district courts.[100] On the one hand, the Sixth and Eleventh Circuits have

---

[97] See, e.g., Bonilla v. Electrolizing, Inc., 607 F. Supp. 2d 307, 323 n.18 (D.R.I. 2009) (noting that the issue of individual liability under the FMLA is an open question in the First Circuit). One district court in the First Circuit, however, implied otherwise and, citing Laro, held that an individual employed by a public agency was not personally liable on an FMLA claim. See Zayas v. Estado Libre Asociado de P.R., No. 04-1017 (JAG-CVR), 2007 U.S. Dist. LEXIS 99341, at *45 (D.P.R. Feb. 15, 2007).

[98] Compare Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998) (finding a district attorney individually liable under the FMLA), and Bourbeau v. City of Chicopee, 445 F. Supp. 2d 106, 111 (D. Mass. 2006) (finding a garage supervisor individually liable under the FMLA), with Zayas, 2007 U.S. Dist. LEXIS 99341, at *45 (granting summary judgment on an FMLA action against the Secretary of the Administration of Corrections and broadly interpreting Laro's holding regarding a state's Eleventh Amendment immunity as extending to an individual's liability).

[99] This is true both for cases that hold employees individually liable and those that do not: Zayas takes an expansive reading of Laro, while Meara, although considering the individual liability of a public employee under the FMLA, follows the path and analysis of Freemon v. Foley, 911 F. Supp. 326, 330 (N.D. Ill. 1995), which concerned itself with the employees of a hospital and did not discuss public employees. Moreover, Meara relies on a line of reasoning that the FMLA should be similarly interpreted to the FLSA. See Keene v. Rinaldi, 127 F. Supp. 2d 770, 778 (W.D.N.C. 2000). As explained below, this court is reluctant to base its legal conclusions on that same reasoning.

[100] See, e.g., Sadowski v. U.S. Postal Serv., 643 F. Supp. 2d 749, 753 (D. Md. 2009) ("There is also a nationwide split of decisional authority on this issue at both the appellate and trial levels . . . .").

concluded that public employees cannot be held individually liable under the FMLA.[101]  In holding

that the FMLA's individual liability provision "does not extend to public agencies,"[102] the Sixth

Circuit in Mitchell provided three detailed textual reasons for its holding.[103]

On the other hand, the Fifth and Eighth Circuits have taken the opposite position and

concluded that public employees may be held individually liable under the FMLA.[104]  This was the

---

[101] Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003), cert denied, 542 U.S. 937 (2004); Wascura v. Carver, 169 F.3d 683 (11th Cir. 1999).  The Eleventh Circuit's decision in Wascura has held less persuasive force because "the court concluded that the FMLA should be interpreted in the same manner as the FLSA, and therefore was bound by a previous holding of that circuit that a 'public official sued in his individual capacity is not an employer subject to individual liability under the FLSA.'"  Sadowski, 643 F. Supp. 2d at 753 n.3 (quoting Wascura, 169 F. 3d at 686).  The Wascura court therefore did not engage in a textual analysis of the FMLA.  Mitchell, 343 F.3d at 828.  Moreover, the Eleventh Circuit case holding that a public officer cannot be an employer in his individual capacity (because he only has the authority to act in his official capacity) has "been swept away by the Supreme Court in" Hafer v. Melo, 502 U.S. 21, 28 (1991).  Luder v. Endicott, 253 F.3d 1020, 1022 (7th Cir. 2001).

[102] Mitchell, 343 F.3d at 832.

[103] The Mitchell court summarizes the three reasons as follows:

> First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision.  Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statue superfluous and results in several oddities.  Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

Id. at 832.

[104] Modica, 465 F.3d at 185–87 (concluding that a public official may be liable as an employer under the FMLA in her individual capacity); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002) (concluding, based upon the "plain language of the statute," that a public official can be an employer under the FMLA subject to liability in her individual capacity).

majority position, at least as of 2006.[105] This court will accordingly refer to the Fifth and Eighth

Circuits' view as the majority position.[106] The Fifth and Eighth Circuits interpreted the text of the

FMLA as permitting a public employee to be individually liable if the public employee violated the

FMLA and "act[ed], directly or indirectly, in the interest of an employer."[107] The Fifth Circuit in

---

[105] See Modica, 465 F.3d at 184; see also Note, My Individual Acts Can Get Me Fired, But Can My Supervisor's Individual Acts Get Me Money?: Examining Individual Liability for Public Sector Supervisors Under the Family and Medical Leave Act, 58 Rutgers L. Rev. 1023, 1033 (2006) ("It is clear from the case law that the majority of courts have allowed public officials to be held individually liable under the FMLA.").

[106] A search of the Lexis® database using the "Shepardize®" function indicates that this fact is still true after 2006. Nine courts have followed Mitchell's holding regarding the individual liability of supervisors for public agencies, only three of which were not bound by Sixth Circuit precedent: Sadowski, 643 F. Supp. 2d at 754–57; Smith v. V.I. Port Auth., No. 2002-227 (STT), 2008 U.S. Dist. LEXIS 67763, at *10 n.2 (D.V.I. Aug. 29, 2008) (adhering to a prior judge's decision in the case); Miller v. Cnty. of Rockingham, No. 5:06CV00053, 2007 U.S. Dist. LEXIS 23714, at *14–15 (W.D. Va. March 30, 2007); and six district courts in the Sixth Circuit. Eleven courts have followed Modica, five of which were not bound by Modica: Plaxico v. Cnty. of Cook, No. 10 C 272, 2010 U.S. Dist. LEXIS 81572, at *11–15 (N.D. Ill. Aug. 11, 2010); Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 476–77 (W.D. Pa. 2008); Rasic v. City of Northlake, 563 F. Supp. 2d 885, 891–92 (N.D. Ill. 2008); Barnes v. Laporte Cnty., 621 F. Supp. 2d 642, 645 (N.D. Ind. 2008); Haybarger v. Lawrence Cnty. Adult Probation & Parole, No. 06-862, 2007 U.S. Dist. LEXIS 18314, at *16–18 (W.D. Pa. Mar. 14, 2007); and six district court decisions in the Fifth Circuit. There is one other decision that predates Modica by only a few months and agrees with the majority position: Hewett v. Willingboro Bd. of Educ., 421 F. Supp. 2d 814, 820–22 (D.N.J. 2006). In sum, and disregarding those courts bound by their Circuit's binding precedent, since 2006, six courts have decided to follow the majority position, whereas three courts have followed the minority position. See Leila Early, Sadowski v. United States Postal Service: One Step Closer to Delivering a Resolution to the Dispute on Individual Liability for Public Employees Under the Family and Medical Leave Act of 1993, 32 N.C. Cent. L. Rev. 238, 244 (2010) (pointing to a handful of cases and asserting that the "majority of jurisdictions have held that individual supervisors are liable for FMLA violations").

[107] 29 U.S.C. § 2611(4)(A)(ii); see Modica, 465 F.3d at 184 ("[I]f a public employee 'acts, directly or indirectly, in the interest of an employer,' he satisfies the definition of employer under the FMLA, and therefore, may be subject to liability in his individual capacity."); Darby, 287 F.3d at 681 (finding no basis in the statute "to distinguish employers in the public sector from those in the private sector").

Modica also sequentially rejected the three reasons relied upon by the Sixth Circuit in Mitchell.[108]

      c.      The Individual Defendants May Be Liable in Their Individual Capacities

As the First Circuit has instructed in considering the FMLA, this court's analysis begins "with the language of the statute and ask 'whether Congress has directly spoken to the precise question at issue.'"[109] If Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[110]

Based on a fair reading of the FMLA's text, this court concludes that the majority position is more convincing. According to Section 2611(4)(A), the term "employer" includes public agencies. The term "employer" also includes any person who acts "directly or indirectly, in the interest of an employer to any of the employees of such an employer." It follows that an individual acting in the interest of a public agency can be an "employer." The Individual Defendants, therefore, as supervisors in a public agency, may be subject to individual liability under the FMLA.

Because the Individual Defendants' arguments originate from Mitchell,[111] this court will

---

[108] Modica, 465 F.3d at 186–87.

[109] Rucker v. Lee Holding Co., 471 F.3d 6, 9 (1st Cir. 2006) (quoting Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 842 (1984)).

[110] Chevron, 467 U.S. at 842–43.

[111] The Individual Defendants argue generally that the only way to give every clause of the FMLA full effect and have them "make sense" is to exclude public employee liability. Indiv. Defs.' Mem. Supp. Mot. Dismiss, 12 [#5]. They specifically point to the second and third statutory arguments marshaled by the Mitchell court. Id.

explain why the Mitchell court's analysis in less persuasive than the majority position.

The Mitchell court first focused on the separation of the individual liability provision and public agency provision into two clauses, arguing that there is no relationship between clauses (ii)–(iv).[112] The court reasoned that "the separation of otherwise related concepts (i.e., what the term 'employer' 'includes') into distinctly enumerated clauses compels an interpretation that treats each clause in an independent manner."[113] There is, however, no compelling logic for such a conclusion. If the provisions were not distinctly enumerated, but grouped together, it could be just as arguable whether "employer" includes "any person who acts . . . in the interest of an employer" that is a "public agency."[114] And as other courts have pointed out, two grammatical items—(1) the word "and" that follows clause (iii) and (2) the em dash ("— ") that follows the term "employer" (at the top of the definition)—suggest a relationship between the individual liability and public agency provisions.[115] Moreover, although the relevant Senate committee

---

[112] Mitchell, 343 F.3d at 830.

[113] Id. at 830.

[114] 29 U.S.C. § 2611. That is, if clauses (ii)(I), (ii)(II), (iii), and (iv) were one long clause, one could still draw the same conclusion that the Mitchell court drew.

[115] See Modica, 465 F.3d at 185 ("Congress's use of the em dash following the term 'employer' indicates a relationship between clauses such that 'employer means what is provided for in subparagraph (i) and includes what is provided for in subparagraphs (ii), (iii), and (iv).'" (quoting Sheaffer v. Cnty. of Chatham, 337 F. Supp. 2d 709, 728 (M.D.N.C. 2004))). Another court has argued that had Congress intended for clause (4)(A)(ii) to modify the clauses (4)(A)(iii) and (iv), it "surely would have made this intent crystal clear by placing subsection 4(A)(ii) last in the statute." Keene, 127 F. Supp. 2d at 776, 779 (holding that supervisors of public agencies are not liable under the FMLA). But, insofar as the Keene court relied on various other (textual and non-textual) arguments, placing clause 4(A)(ii) last in the statute would not be any more of a "crystal clear" indication that it modified clause 4(A)(iii) and (iv).

report is not dispositive of the issue, it does slightly weigh in favor of this court's reading.[116]

The Mitchell court next argued that having clauses (i)–(iv) included in the term "employer" would yield an interpretation that "renders other provisions of the statute superfluous" and create "several oddities."[117] Each oddity or apparent superfluous aspect has been convincingly refuted by other courts. First, Section 2611(4)(B), providing that a public agency is considered a "person engaged in commerce or in an industry or activity affecting commerce," is not rendered superfluous because its purpose is to relieve plaintiffs of the burden of proving that a public agency is engaged in commerce.[118] Second, an interpretation that holds

---

[116] The report indicates that the majority viewed "employer" as being equally defined by public agencies and private employers. See S. Comm. on Labor and Human Res., Family and Medical Leave Act of 1993, S. Rep. 103–3, 21–22 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 23–24, 1993 WL 22195, at *19 ("Section 101(4)(A) defines an "employer" as any public agency as defined in section 3(x) of the FLSA, and any person engaged in commerce or in an industry or activity affecting commerce who employs 50 or more employees . . . ."). Insofar as the definition of "employer" places public agencies and private employers on an equal plane, there is no clear reason why clause (ii)(I) would not apply to public agencies. Also, this court's consideration of legislative history, even where the statutory text is clear by its plain meaning, is in accord with the interpretive methods of the First Circuit. See, e.g., United States v. Larios, 593 F.3d 82, 90 (1st Cir. 2010); Mass. Museum of Contemporary Art Found., Inc. v. Buchel, 593 F.3d 38, 51 (1st Cir. 2010); Gen. Dynamics Land Sys. v. Cline, 540 U.S. 581 (2004) (using legislative history to confirm plain meaning of language used in initial step of Chevron analysis). But see Saysana v. Gillen, 590 F.3d 7, 16 (1st Cir. 2009) ("We approach all arguments based on legislative history with significant caution. . . . [A] speculative argument based on legislative history pales in the face of a very strong argument based on text and structure."); Strickland v. Comm'r, Me. Dep't of Human Servs., 48 F.3d 12, 17 (1st Cir. 1995) (assuming without deciding that, during the initial stage of a Chevron inquiry, if a text's meaning is not readily apparent, a court may skeptically look into legislative history for an unmistakable expression of congressional intent).

[117] Mitchell, 343 F.3d at 830.

[118] Modica, 465 F.3d at 186; see Hewett, 421 F. Supp. 2d at 820 ("Section 2611(4)(b) expressly waives the requirement that plaintiffs prove that a public agency defendant is 'engaged in commerce or in any industry or activity affecting commerce . . . .' It is difficult to envision that Congress would have at the same time implicitly barred suits against individual within those same agencies."). The Mitchell court also argued that clauses (i), (ii), and (iii) could not be read together because public agencies do not have to meet the fifty employee requirement to be

supervisors of public agencies individually liable is not redundant, particularly given that holding a supervisor in the private sector liable yields an identical result.[119]  Third, this court's interpretation does not create an "absurdity" through the successor-in-interest clause ((ii)(II)) applying to the Government Accountability Office ("GAO") and Library of Congress (clause iv).[120]  Clause (iv) was only included by a 1995 amendment[121] and this unanticipated effect on the 1993 law should

<hr/>

considered an employer under the FMLA.  Mitchell, 343 F.3d at 831 ("'Public agencies are covered employers without regard to the number of employees employed.'" (quoting 29 C.F.R. § 825.104(a))).  This argument, for two reasons, does not prove that supervisors in public agencies cannot be held individually liable.  First, there is no reason in the structure or grammar of the statute that clause (ii)(I) should only modify clause (i) and not modify clause (iii).  The non-relation of clause (iii) to clause (i) does not require clause (ii)(I) to apply only to clause (i) and not to clause (iii).  In fact, this reading of the text, that clause (ii)(I) applies to both clauses (iii) and (i), is supported by the views of the relevant Senate committee in the legislative history.  See supra note 116 and accompanying text.  Second, clause (iii) was likely separated from clause (i) for a different reason.  Clause (i) includes as employers only those who employ "50 or more employees."  Congress was expressly and repeatedly concerned about the FMLA's impact (or lack thereof) on small businesses.  See, e.g., H. Comm. on Educ. and Labor, Family and Medical Leave Act of 1993, H.R. Rep. No. 103–8, pt. 1, at 20, 56, 59–60 (1993), reprinted in 1993 WL 30780, at *23, 57–58, 60–61 (containing committee's summary of legislative action, along with the Secretary of Labor's and minority views); S. Rep. No. 103–3, at 49 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 51, 1993 WL 22195, at *43–44 (minority views); 139 Cong. Rec. S1341, S1343–44 (1993) (remarks of Senators Wellstone, Gorton, & McCain).   There is, however, no indication that Congress separated clause (iii) because it desired to avoid individual liability in public agencies.

[119] See Hewett, 421 F. Supp. 2d at 819; Morrow v. Putnam, 142 F. Supp. 2d 1271, 1271 (D. Nev. 2001) (holding that public officials can be individually liable under the FMLA and explaining that the "statute becomes recursive when applied to supervisory personnel, because the definition of employer refers back to the word employer itself").

[120] See Def.'s Mem. Supp. Mot. Dismiss, 12 [#5].  Specifically, the Sixth Circuit was concerned that finding liability for public employees would lead to the untenable result of extending "specific protection to employees of the GAO and the Library of Congress from future successors in interest."  Mitchell, 343 F.3d at 831 ("[I]t is an exercise in absurdity to consider that the FMLA sought to protect employees of two long-standing federal entities from threats posed by any future successors in interest.").

[121] See Congressional Accountability Act of 1995, Pub. L. 104–1, § 202, 1995 U.S.C.C.A.N. (109 Stat. 9).

not change the "straightforward language of the clauses" with which this court is here

concerned.[122]  The Mitchell court lastly argued that a definition of "employer" that "incorporates

the individual liability and public agency provision[s] into a single clause is substantially similar to,

if not identical,"[123] to definition of employer in the Fair Labor Standards Act ("FLSA").[124]  Had

Congress intended the FMLA and FLSA's definitions of "employer" to be identical, the Mitchell

court argued, it would have expressly adopted the FLSA's definition.[125]  This argument is

unconvincing for four reasons, three of which have been succinctly expressed by another court:

> [1] [I]t would have been curious for the FMLA to have incorporated the FLSA's
> definition of "employer," as that definition makes explicit reference to "labor
> organizations."  Such a reference in the context of the Family and Medical Leave Act
> would have been unnecessary and a likely cause of confusion.  [2] In any event, though the
> FMLA does adopt several of the FSLA's [sic] provisions by direct reference, in other
> instances it does not.  Compare 29 U.S.C. § 2611(1) (defining "commerce"), with 29
> U.S.C. § 203(b) (same) . . . . [3] [I]f Congress wanted to shield public officials from
> liability under the FMLA, it would have done so explicitly; indeed, Congress did so in the
> FLSA when it excluded from the definition of "employer" "any labor organization (other
> than when acting as an employer) or anyone acting in the capacity of officer or agent of
> such labor organization."  Congress could have as easily included a provision in Section
> 2611(4) limiting the liability of public agencies to the agencies themselves. Congress chose

---

[122] Hewett, 421 F. Supp. 2d at 820–21 (explaining that " when it was enacted in 1993, the FMLA did not seek to protect" employees of the GAO and Library of Congress from threats posed by future successors in interest).  Also, it is logically consistent to maintain this court's conclusion concerning public supervisors' liability and separately read the successor-in-interest clause as not applying to clause (iv).  At the least, it is not "quite impossible that [the 1995] Congress could have intended" this result.  Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 471 (1989) (Kennedy, J., concurring).

[123] Mitchell, 343 F.3d 811 at 831.

[124] 29 U.S.C. § 203.  The FLSA defines "employer" as any "person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).

[125] Id. at 831–32 (arguing that FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions).

not to do so, and this Court is not prepared to read into the statute that effect.[126]

Fourth, various courts have concluded that the FMLA's definition of "employer" is virtually identical to the FLSA's definition of "employer," and the term "employer" should be interpreted the same way under both statutes.[127]

Although this court's reasoning does not rely solely on the analogy between the FMLA

---

[126] Hewett, 421 F. Supp. 2d at 821 (citations omitted). This argument from negative implication appears to be in accord with Supreme Court decisions. Cf. Keene Corp. v. United States, 508 U.S. 200, 208 (1993) (noting a court's duty to "refrain from reading a phrase into the statute when Congress has left it out. 'Where Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983))).

The third argument of the Hewett court also appears to be supported by statements by the co-sponsor of the FMLA. H.R. 1, The Family and Medical Leave Act of 1993, Hon. William D. Ford, E29 (Extension of Remarks, January 5, 1993) (explaining how the bill reflects a careful balance between families and employers in that it "exempts small business and excludes certain key employees from coverage if their absence would cause serious economic injury to their employer").

[127] See, e.g., Modica, 465 F.3d at 186; Wascura, 169 F.3d at 685–86 ("[T]he FMLA's definition of 'employer' is . . . materially identical [with] the definition of 'employer' used in the [FLSA]."). Some courts and scholars, however, have disagreed with this conclusion. See, e.g., Keene, 127 F. Supp. at 775 n.2 ("In 1974, Congress merely engrafted 'Public Agency' into the FLSA by adding to an existing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took 'Public Agency' out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA."); Note, Individual Liability Under the Family and Medical Leave Act of 1993: A Senseless Detour on the Road to Flexible Workplace, 63 Brook. L. Rev. 1299, 1331–35 (1997) (arguing that the disparities between the purposes, protections, provisions, remedies, and coverages of the FLSA and FMLA weaken the ability to rely on reasoning from FLSA cases when deciding issues arising under the FMLA).

and FLSA,[128] the First Circuit may find otherwise.[129]  Accordingly, the First Circuit's relevant

FLSA decisions indicate that the Individual Defendants may still be held individually liable.

Specifically, the First Circuit interprets the FLSA's definition of "employer" pursuant to an

"economic reality" analysis.[130]  The First Circuit has determined that several factors are important

to the personal liability analysis, including the individual's ownership interest, degree of control

over the corporation's financial affairs and compensation practices, and role in "caus[ing] the

corporation to compensate (or not to compensate) employees in accordance with the FLSA."[131]

With this test and factors in mind, the First Circuit has affirmed a president of a corporation being

held liable because he did not just have "some supervisory control over other employees" but had

"ultimate control over the business's day-to-day operations."[132]  Moreover, he was "instrumental"

in "causing" the corporation to violate the FLSA because he was the "corporate officer principally

in charge of directing employment practices, such as hiring and firing employees, requiring

---

[128] See supra footnote 127 and accompanying text.  See Meara, 27 F. Supp. 2d at 291, for a court basing its conclusion on the similarity between the FMLA and FLSA.

[129] Other circuits have noted that decisions interpreting the FLSA may offer "the best guidance for construing the term there 'employer' as it is used in the FMLA."  Modica, 465 F.3d at 186 (quoting Wascura, 169 F.3d at 686).

[130] Donovan v. Agnew, 712 F.2d 1509, 1510, 1514 (1st Cir. 1983) (citing Goldberg v. Whitaker, 366 U.S. 28, 33 (1961)) (narrowly determining that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment" were not precluded from personal liability under the FLSA).

[131] Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007) (quoting Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668 (1st Cir. 1998)).

[132] Id. at 34.

employees to attend meetings unpaid, and setting employees' wages and schedules."[133]  The First

Circuit's "economic reality" has been applied in the FMLA context by district courts in the First

Circuit, albeit in the context of a supervisor working for a private company.[134]

Were the First Circuit to apply this test to the context of a supervisor of a "public

agency,"[135] the Individual Defendants' <u>Motion</u> would likely still be denied.  All of the Individual

Defendants are alleged to have been instrumental in causing the violation of Plaintiff's FMLA

rights.[136]  Defendants Massimo and d'Hedouville were allegedly particularly instrumental in some

---

[133] <u>Id.</u> (citations omitted).

[134] <u>See</u> <u>Brunelle v. Cyro Indus.</u>, 225 F. Supp. 2d 67, 82 (D. Me. 2002) (imposing FMLA individual liability in the context of an individual working for a private company by applying the parallel factors under the FLSA to determine if an employer exercised sufficient control over an employee).  Adapting <u>Baystate</u>, 163 F.3d 688, the <u>Brunelle</u> court phrased the factors as whether an individual actor "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment;" (4) maintained employment records; and (5) "had personal responsibility for making decisions that contributed to the alleged violation." <u>Id.</u> (citations and internal quotation marks omitted).  Although the <u>Brunelle</u> court was considering a motion for summary judgment, it should be appropriate to consider the economic reality analysis on a motion to dismiss.  <u>See, e.g.</u>, <u>Danio v. Emerson Coll.</u>, 963 F. Supp. 61, 63 (D. Mass. 1997) (applying a functionally similar "economic realities test" to a motion to dismiss in a Federal Equal Pay Act claim); <u>Smith v. Westchester Cnty.</u>, No. 09-CV-5866 (KMK), 2011 U.S. Dist. LEXIS 15805, at *69–71 (S.D.N.Y. Feb. 15, 2011) (collecting cases and explaining that because the economic reality test is a factual inquiry that does not bear on the sufficiency of the pleadings, a plaintiff, to survive a motion to dismiss, need not allege facts to satisfy the economic reality test, but must simply plead that the individual defendants had "substantial control over the aspects of employment alleged to have been violated" (quotations and citations omitted)).

[135] <u>See</u> Note, <u>Hide and Seek: The FMLA Game of Personal Liability for Public Sector Supervisors</u>, 51 Wayne L. Rev. 1587, 1606 (2005) (suggesting that public sector supervisors are analogous to private sector supervisors and could be subject to the same factors that are used to determine whether private sector supervisors are employers).

[136] Defendants Burt, d'Hedouville, Massimo, McGillicuddy, and Stolfa were all present at the November 17, 2007 meeting that resulted in Plaintiff being disciplined. Compl. ¶¶ 97–99 [#1]. This action alone may be insufficient to constitute retaliation under the FMLA because Plaintiff did not yet explicitly request information about his FMLA rights.  <u>See</u> Compl. ¶ 114 [#1].  But

violations.[137]  Defendant Massimo not only allegedly denied Plaintiff leave under the FMLA,[138] but also violated Plaintiff's FMLA rights in other ways.[139]  Plaintiff repeatedly informed Defendant d'Hedouville of Plaintiff's personal medical conditions[140] and Defendant d'Hedouville did not

---

Plaintiff had already informed some of his supervisors of his various medical problems and had taken time off from work.  Compl. ¶ 77 [#1].  The seriousness of these problems (e.g., Plaintiff's hospitalization), combined with Plaintiff utilizing his accrued sick and vacation time, could have alerted Defendants that Plaintiff's use of leave was potentially FMLA-qualifying and even placed them on constructive notice.  See, e.g., 29 C.F.R. § 825.301(a) ("In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying."); id. § 825.302(c) (explaining how, in the event of foreseeable FMLA leave, an employee can verbally notify an employer of her FMLA leave without mentioning the FMLA); id. § 825.303(b) (same but in the event of unforeseeable FMLA leave); Stevenson v. Hyre Elec., Co., 505 F.3d 720, 726 (7th Cir. 2007) (explaining that an employee's "inability to communicate his illness to his employer or clear abnormalities in the employee's behavior may constitute constructive notice of a serious health condition." (citing Byrne v. Avon Prods., Inc., 328 F.3d 379, 381–82 (7th Cir. 2003))).  But see Scobey v. Nucor Steel-Ark., 580 F.3d 781, 788 (8th Cir. 2009) (declining to adopt a constructive-notice exception to an employee's affirmative duty to notify her employer of the need for leave that might be FMLA-qualifying).

[137] Alternatively stated, Defendants d'Hedouville and Massimo appeared to have personal responsibility for making decisions that contributed to the alleged violation.

[138] Compl. ¶¶ 116, 127, 129 [#1].

[139] For instance, Defendant Massimo required Plaintiff to obtain the opinion of a second health care provider.  Compl. ¶ 132 [#1].  This opinion conflicted with Plaintiff's Certification—the first opinion of a health care provider.  See supra Section II.A.  Without an opportunity for Plaintiff to cure alleged deficiencies in his Certification or seek a third opinion, Defendant Massimo recommended Plaintiff be terminated based upon the second medical opinion.  Compl. ¶ 154 [#1].  If true, this may be a violation of Plaintiff's FMLA's rights.  See Tayag, 2011 U.S. App. LEXIS 1697, at *12 ("[T]he statutory procedure in the event of a conflict between certifying doctors would require joint agreement on a third health care provider to give a binding final opinion.  29 U.S.C. § 2613(d).  At most [Plaintiff] might have been entitled to a third opinion and 'a reasonable opportunity to cure any . . . deficiency' in certification raised by [Defendants] . . . .'") (quoting 29 C.F.R. § 825.305(d)).

[140] Compl. ¶¶ 53, 66 [#1].

inform Plaintiff of his FMLA rights.[141]  Although Defendants Burt, McGillicuddy, and Stolfa

were not as often involved with Plaintiff, they nonetheless appear to be responsible for making

decisions that contributed to the alleged violations.[142]  These three Defendants also appear to have

exercised a sufficient level of control, at least in regards to the power to hire and fire

employees.[143]  Moreover, Plaintiff alleges that all of the Individual Defendants retaliated against

him by terminating him for requesting FMLA leave.[144]  Plaintiff has therefore adequately pled that

the Individual Defendants were instrumental in causing the violation of his FMLA rights.[145]

On a separate note, the Individual Defendants argue that Congress did not intend to hold

individuals working for public agencies liable because it would be a disincentive to enter public

service.[146]  This argument is not persuasive for several reasons.  First, this court's conclusion is

rooted in the plain meaning of the statute and it need not venture into extensive speculations

concerning congressional intent and purpose behind the FMLA.[147]  Second, the Individual

---

[141] Compl. ¶ 81 [#1].

[142] See supra note 134 and accompanying text.

[143] These three Defendants were in a high position of authority.  Defendant Burt was the Commissioner of the DEP, Defendant McGillicudy was the Deputy Commissioner, and Defendant Stolfa was the General Counsel.  As such, their presence at the disciplinary proceeding allows this court to infer at this stage of the proceedings that they had sufficient control over Plaintiff's employment.

[144] Compl. ¶ 230 [#1].

[145] Or Plaintiff has at least adequately pled that the Individual Defendants had "substantial control over the aspects of Plaintiff's employment that he alleges were violated."  Smith, 2011 U.S. Dist. LEXIS 15805, at *71–72.

[146] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 13 n.8 [#5].

[147] Insofar as this argument requires looking at legislative history, the Supreme Court has cautioned against relying on legislative history if the language of the statute is plain.  See, e.g.,

Defendants cite authority—case law, congressional history, or other—to support their argument. Third, insofar as this is an invocation of the "dog that did not bark" canon,[148] the canon does not apply because there is no indication that a potential disincentive to enter public service "would be so extreme as to have inevitably provoked comment in Congress."[149]

This court's conclusion is based on the FMLA's clear text. Recognizing, however, that another court might hold that the FMLA is ambiguous,[150] this court notes that the Department of Labor's ("DOL") interpretations could support the view that supervisors in public agencies are

---

United States v. Gonzales, 520 U.S. 1, 6 (1997); Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–254 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citations omitted)).

[148] Rucker v. Lee Holding Co., 471 F.3d 6, 10 (1st Cir. 2006) ("The rationale for the canon, however, is that some interpretations would have been so controversial as to inevitably have drawn comment in Congress; in such a situation, Congress's silence can be taken to mean that it chose the noncontroversial path." (citing Chisom v. Roemer, 501 U.S. 380, 396 & n.23 (1991))).

[149] Id. at 10 ("This is a case in which '[w]e have little sense whether any Member of Congress would have been particularly upset' by either result." (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 571 (2005))). Moreover, were this court to even entertain a debate of Congress's intentions on the matter, it would point out that this same argument cuts against the Individual Defendants: leaving employees of state agencies, like Plaintiff, without any remedy for a violation of their FMLA rights would dampen the incentive of employees to enter public service. Cf. Family and Medical Leave Act of 1993, Statement of Rep. Clay (Sponsor), H381 (House of Representatives, Feb. 3, 1993) (In the Committee of the Whole) ("Our Government should be a model employer. It is important to provide this benefit to the hard-working individuals who have chosen to dedicate their careers to public service.").

[150] Although this court need not engage in the second inquiry of Chevron, Saysana v. Gillen, 614 F.3d 1, 4 (1st Cir. 2010), doing so is nonetheless in accord with the practice of the First Circuit, see, e.g., Saysana, 590 F.3d at 16 (concluding that the text of the statute was clear but nonetheless considering the agency's interpretation "if we were to conclude that the statute were ambiguous").

individually liable.[151]  The <u>Modica</u> and <u>Mitchell</u> courts cited to the same provisions of the Code of

Federal Regulations defining "employer" and both courts claimed that those provisions supported

their contrary conclusions.[152]  Whereas the <u>Modica</u> court found that the definition of "employer"

under the FMLA  was "virtually the same" as the definition in the FLSA (but for the inclusion of

successors in interest and exclusion of labor organizations),[153] the <u>Mitchell</u> court thought the

separation between "public agency" and "directly or indirectly" in one definition supported its

interpretation.[154]  The <u>Mitchell</u> court also highlighted the mention of "corporate officers" in

---

[151] The DOL has authority to promulgate guidelines for the FMLA.  <u>See</u> <u>Engelhardt v.</u>
<u>S.P. Richards Co.</u>, 472 F.3d 1, 3–4 (1st Cir. 2006) (citing 29 U.S.C. § 2654).

[152] The relevant portions of the Code of Federal Regulations are as follows:

> An employer covered by FMLA is any person engaged in commerce or in any industry or
> activity affecting commerce, who employs 50 or more employees for each working day
> during each of 20 or more calendar workweeks in the current or preceding calendar year.
> Employers covered by FMLA also include any person acting, directly or indirectly, in the
> interest of a covered employer to any of the employees of the employer, any successor in
> interest of a covered employer, and any public agency.  Public agencies are covered
> employers without regard to the number of employees employed.  (See § 825.600.)

29 C.F.R. § 825.104(a).

> An "employer" includes any person who acts directly or indirectly in the interest of an
> employer to any of the employer's employees.  The definition of "employer" in section
> 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 203(d), similarly includes any
> person acting directly or indirectly in the interest of an employer in relation to an
> employee.  As under the FLSA, individuals such as corporate officers "acting in the
> interest of an employer" are individually liable for any violations of the requirements of
> FMLA.

<u>Id.</u> § 825.104(d).

[153] <u>Modica</u>, 465 F.3d at 186.

[154] <u>Mitchell</u>, 343 F.3d at 832.

34

another definition.[155]  The Mitchell court's view of the agency's final rule is not convincing for

two reasons.  First, no logic compels the Mitchell court's interpretation of the regulations.  The

clause "directly or indirectly" can still coherently relate to the "public agency" clause such that a

supervisor within a public agency may be an "employer."  Second, the regulatory preamble (or

"Summary of Major Comments") explaining the regulation at issue—the definition of

"employer"—suggests that the DOL agrees with this court's conclusion.[156]  Specifically, a public

agency with jurisdiction over public (and private) entities questioned "whether managers or

supervisors can be held personally liable" under the FMLA.[157]  In response to this question from a

public agency, the DOL clarified that not only "corporate officers" but "managers and

supervisors" can also be held individually liable.[158]  The DOL's interpretations, therefore,

reinforce this court's conclusion, which is rooted in the statutory text, that supervisors in public

agencies may be held individually liable for violations of the FMLA.[159]

---

[155] Id.

[156] Cf. Rucker, 471 F.3d at 12 (discussing the regulatory preamble).

[157] 60 Fed. Reg. at 2181.  The inquiring agency was the California Department of Fair Employment and Housing.  See About, California Department of Fair Employment and Housing, http://www.dfeh.ca.gov/DFEH/About/Default.aspx (last visited Mar. 25, 2011).

[158] 60 Fed. Reg. at 2181 ("[The] FMLA's definition of 'employer' is the same as the . . . FLSA insofar as it includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees.  Under established FLSA case law, corporate officers, managers and supervisors acting in the interest of an employer can be held individually liable for violations of the law." (citation omitted)).  Although the DOL cited Fifth and Sixth Circuit decisions concerning private employers, the Fifth Circuit had already held that a sheriff is an employer for purposes of the FLSA.  See Lee v. Coahoma Cnty., Miss., 937 F.2d 220, 226 (5th Cir. 1991)).  In response to the public agency, therefore, the DOL's reference to "established FLSA case law" likely meant to include individual liability for supervisors in public agencies.

[159] Additionally, although this court focuses on the text of the FMLA, some courts have been motivated by a non-textual argument to hold that supervisors in public agencies are not

The Individual Defendants argue that even if they fall within the definition of an

"employer" under the FMLA and are subject to individual liability, they are entitled to qualified

immunity because their liability had not been "clearly established."[160]  The Individual Defendants

provide no First Circuit case law to support the application of qualified immunity here.[161]  The

Individual Defendants argue solely that they should receive qualified immunity because of legal

uncertainty over the individual liability of public officials.[162]  This argument misconstrues the First

Circuit's method of analyzing a qualified immunity claim.  A claim of qualified immunity concerns

---

individually liable under the FMLA.  Such a non-textual argument would not alter this court's
conclusion.  Specifically, if indeed the "intention of the language" is simply "to ensure that
someone will be held individually responsible for paying for or rectifying a FMLA violation,"
Keene, 127 F. Supp. 2d at 777, then the FMLA (or the Keene court's interpretation of it) would
indicate that the Individual Defendants should be responsible because the DEP retains Eleventh
Amendment immunity, see supra Section III.A.1.  Moreover, insofar as this decision is specific to
the facts at issue here, holding the Individual Defendants liable would not promote "redundancy,
unnecessary complication, and the involvement of unnecessary persons who may be in a position
not far removed from the employee who is bringing the lawsuit."  Keene, 127 F. Supp. 2d at 777.
The Individual Defendants are not redundant or an unnecessary complication, of course, because
of the immunity of the DEP.  They are not unnecessary persons not far removed from Plaintiff
because all of them, as explained below, are alleged to have played a role in the conduct that
constituted violations of Plaintiff's FMLA rights.

[160] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 13–15 [#5].

[161] The First Circuit has not addressed qualified immunity in an FMLA action. Moreover,
district courts in the First Circuit discussing individual liability in an FMLA action do not raise the
issue of qualified immunity.  See, e.g., Meara, 27 F. Supp. 2d at 291.  This court assumes that
qualified immunity may be applied in an FMLA case.  See, e.g., Modica, 465 F.3d at 187 (holding
that a public employee was entitled to qualified immunity because it was not clearly established
that public employees are subject to individual liability under the FMLA); Darby, 287 F.3d at 681
(denying individual defendants' defense of qualified immunity to FMLA violation); cf. Bartolomeo
v. Plymouth Cnty. House of Corrs., No. 99-1621, 2000 U.S. App. LEXIS 20915, at *3, 4 n.2 (1st
Cir. 2000) (discussing qualified immunity defense for official subject to personal liability under
Title II of the ADA).

[162] Indiv. Defs.' Mem. Supp. Mot. Dismiss, 14–15 [#5].

the Individual Defendants' underlying <u>conduct</u> that gives rise to liability, not their prospective

<u>liability</u> for violating a statute.[163]  Any doubt as to the Individual Defendants' liability is irrelevant

because Plaintiff, as an employee of a public agency, had clearly established rights under the

FMLA.[164]  This court therefore focuses its argument below on the proper qualified immunity

analysis.[165]

---

[163] <u>See, e.g.</u>, <u>Harlow</u>, 457 U.S. at 818 (explaining that the doctrine shields officials from liability for damages "insofar as their <u>conduct</u> does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (emphasis added)); <u>Mosher v. Nelson</u>, 589 F.3d 488, 493 (1st Cir. 2009) ("To be liable, an official must be on notice that his <u>conduct</u> violates established law." (emphasis added) (citing <u>Hope v. Pelzer</u>, 536 U.S. 630, 741 (2002))); <u>Brady v. Dill</u>, 187 F.3d 104, 115–16 (1st Cir. 1999) ("[T]he law must have defined the <u>right</u> in a quite specific manner [and] the announcement of the rule establishing the right must have been unambiguous and widespread, such that the unlawfulness of particular <u>conduct</u> will be apparent ex ante to reasonable public officials." (emphasis added) (citations omitted)); <u>Gray v. Baker</u>, 399 F.3d 1241, 1246 (10th Cir. 2005) ("[D]efendants have never asserted a true qualified immunity defense to the FMLA claims asserted against them, i.e., they have never asserted that they should be shielded from liability because they acted in good faith in interpreting and applying the FMLA to [Plaintiff's] situation."); <u>Brunson v. Forest Pres. Dist. of Cook Cnty.</u>, No. 08-C-2200, 2010 U.S. Dist. LEXIS 18949, at *22–23 (N.D. Ill. 2010) ("An argument about whether some class of defendants is subject to liability under a statute has no connection to rules of conduct imposed by that statute.  Whether or not [the Individual Defendants] can be sued under the FMLA, the rules governing [their] <u>conduct</u> are clear." (citations omitted)).  <u>But see</u> <u>Modica</u>, 465 F.3d at 187–88 (holding that a public employee was entitled to qualified immunity because it was not clearly established that public employees are subject to individual liability under the FMLA).

[164] Although there may be a question of whether and which supervisor is liable for his or her conduct, there is no dispute that Plaintiff's status as an employee in a public agency would entitle him to protection under the FMLA.  Accordingly, a violation of Plaintiff's rights would be unlawful, even if no one could be held liable for such a violation.  <u>See, e.g.</u>, <u>Sueiro Vazquez v. Torregrosa de la Rosa</u>, 494 F.3d 227, 234 (1st Cir. 2007) (affirming the district court's finding that the defendants were entitled to qualified immunity because they or a similarly situated reasonable officer would not have understood that they were violating clearly established rights even though the district court had decided that there was a violation of the plaintiff's constitutional rights).

[165] Moreover, the Individual Defendants' argument had merit does not withstand scrutiny if analyzed against the weight of persuasive authority.  <u>See</u> <u>infra</u> note 171.  By late 2007, individual liability for supervisors in public agencies had been repeatedly expressed as the majority

As the Supreme Court has reaffirmed, the doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[166] To determine whether a particular officer is entitled to qualified immunity, a "court must decide: (1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional [or statutory] right; and (2) if so, whether the right was 'clearly established at the time of the defendant's alleged violation.'"[167] The First Circuit has explained that the second step of the qualified immunity analysis has two aspects: "(1) 'the clarity of the law at the time of the alleged civil rights violation' and (2) whether, on the facts of the case, a 'reasonable defendant would have understood that this conduct violated the Plaintiff's constitutional [or statutory] rights.'"[168] A defendant, therefore, is entitled to qualified immunity if a "reasonable official would

---

position. See supra note 105 and accompanying text. Additionally, the only two decisions issued in the District of Massachusetts on the matter had held supervisors individually liable. See supra note 98. The combination of these two points would likely be enough to constitute a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617 (1999). Compare Maldonado v. Fontanes, 568 F.3d 263, 271 (1st Cir. 2009) (holding that a consensus existed where multiple circuits had agreed on a point of law and none disagreed), with Jennings v. Jones, 499 F.3d 2, 27 (1st Cir. 2007) (explaining that a single opinion from one other circuit is insufficient to show that the law is clearly established).

[166] Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 816 (2009) (quoting Harlow, 457 U.S. at 818).

[167] Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (quoting Maldonado, 568 F.3d at 269). Plaintiff's allegations are taken as true. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 (1st Cir. 2009) (citing Maldonado, 568 F.3d at 269).

[168] Estrada, 594 F.3d at 63 (quoting Maldonado, 568 F.3d at 269; citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

not have understood" that her conduct violated a plaintiff's constitutional or statutory rights.[169]

This prong of the inquiry is highly fact-specific.[170] In conducting this analysis, "a court should

'use its full knowledge of its own [and other relevant] precedents.'"[171]      Under the above

analysis, both of the prongs of the qualified immunity analysis have been met.[172] First, Plaintiff has

alleged conduct that constitutes a violation of the FMLA. The Individual Defendants allegedly

failed to comply with statutory procedures. For instance, the Individual Defendants allegedly

failed to provide Plaintiff with a third health care provider to give a binding final opinion to

resolve the conflict between certifying doctors.[173] Plaintiff's request for FMLA leave was

---

[169] Id.

[170] Id. (citations and internal quotation marks omitted).

[171] Barton v. Clancy, No. 08-2479, 2011 U.S. App. LEXIS 715, at *33 (1st Cir. Jan. 14, 2011) (alteration in original) (quoting Elder v. Holloway, 510 U.S. 510, 516 (1994)) ("The court must examine whether there are cases of controlling authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful and should search the relevant authorities both in circuit and out of circuit." (alteration in original) (citations and internal quotation marks omitted)); see also El Dia, Inc. v. Rossello, 165 F.3d 106, 110 n.3 (1st Cir. 1999) (stating that whether precedent "clearly establishes" a law may depend in part upon "the location and level of the precedent, its date, its persuasive force, and its level of factual similarity to the facts before this Court").

[172] Further facts developed in the course of discovery may reveal that some of the Individual Defendants did not partake in the violations of Plaintiff's FMLA rights. This court's "conclusions on qualified immunity based on the allegations in the complaint do not preclude the defendants from raising this defense at a later stage of this litigation, on a more developed factual record." Sanchez, 590 F.3d at 52 n.15 (citations omitted); see also Jordan v. Carter, 428 F.3d 67, 76 n.4 (1st Cir. 2005) ("[D]enial of immunity at the motion-to-dismiss stage does not preclude renewal of the defense in a subsequent motion for summary judgment or at trial.").

[173] Supra Section II.A; see also 29 U.S.C. § 2613(d); Tayag, 2011 U.S. App. LEXIS 1697, at *12 (explaining that a plaintiff "might" be entitled to a third opinion).

denied.[174]  Plaintiff has alleged interference with his FMLA rights[175] and retaliation for his exercise

of those rights.[176]

Second, between late 2007 and early 2008,[177] this conduct was clearly established as a

violation of the FMLA.  Applying the two subsidiary issues on the second prong, this court first

determines that the law was clear in general that it was a violation of the FMLA for the Individual

Defendants to engage in the conduct at issue.  These violated rights include[178] the following: (a)

the employers' interference with Plaintiff's FMLA rights by failing to provide FMLA leave and

not discharging their obligations to inquire; and (b) terminating Plaintiff in retaliation for his

requesting FMLA leave.[179]  Failing to provide Plaintiff's requested leave could be a violation of

---

[174] Supra Section II.A (requesting leave from Defendant d'Hedouville, who forwarded the request to Defendants Massimo and Stolfa).

[175] See, e.g., 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title."); Colburn, 429 F.3d at 331 (citations omitted).

[176] Supra Section II.A; see, e.g., Colburn, 429 F.3d at 331–33 ("[T]his court has recognized such a cause of action in the statute and specifically the interpretative regulation 29 C.F.R. § 825.220(c)."). Here, retaliation against Plaintiff for requesting FMLA leave could itself be wrongful.  See Tayag, 2011 U.S. App. LEXIS 1697, at *12 (citing Colburn, 429 F.3d at 336 n.10)).

[177] This question is resolved based on the "state of the law at the time of the alleged violation." Walden v. City of Providence, 596 F.3d 38, 53 (1st Cir. 2010) (citing Brousseau v. Haugen, 543 U.S. 194, 198 (2004)).

[178] This court should define the right(s) allegedly violated at an "'appropriate level of specificity. Raiche v. Pietroski, 623 F.3d 30, 38 (1st Cir. 2010) (quoting Wilson, 526 U.S. at 615).

[179] Plaintiff, having been hospitalized for his impairments, has alleged entitlement under the FMLA for a serious health condition.  See 29 U.S.C. § 2611(11) (defining a "serious health condition" as an illness, injury, impairment, or physical mental condition that involves (a) inpatient care in a hospital or (b) continuing treatment by a health care provider).  Additionally, assuming that Plaintiff's condition prevented him from going to work, see Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 164–65 (1st Cir. 1998), the medical impairments that Plaintiff suffered from

40

the FMLA.[180]  The Individual Defendants' failure to provide Plaintiff individualized notice of the

FMLA would also be a violation, at least if it harmed or prejudiced Plaintiff.[181]  The Individual

Defendants' alleged acts of retaliation (e.g., termination) were clearly established as violations of

the FMLA.[182]  Moreover, existing case law gave the Individual Defendants notice that it was

potentially a violation of the FMLA to not allow for a third health care provider to resolve the

conflict between certifying doctors.[183]  Other courts, including controlling authority in at least one

instance,[184] have noted that similar conduct constituted violations of the FMLA.

Not only was the law generally clear that the Individual Defendants' conduct violated

Plaintiff's FMLA rights, but, turning to the second subsidiary issue, on the facts of the case, a

reasonable defendant would have understood that this conduct violated the Plaintiff's FMLA

rights.  An objectively reasonable defendant would have understood that not providing notice to

---

and was treated for could likely qualify for protection under the FMLA, see, e.g., Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 581 (5th Cir. 2006) (colleting cases granting FMLA leave to an employee with severe diarrhea).

[180] See, e.g, Degan v. Goldwell of New Eng., Inc., No. 04-11024-RWZ, 2006 U.S. Dist. LEXIS 4349, at *8–12 (D. Mass. Feb. 6, 2006) (denying defendants' request for summary judgment where plaintiff alleged an employer's failure to provide requested FMLA leave).

[181] See, e.g. Hess v. Rochester Sch. Dist., 396 F. Supp. 2d 65, 78 (D.N.H. 2005) (citations omitted); Weeden v. Sears Roebuck & Co., 1999 U.S. Dist. LEXIS 22495, at *11 (D.N.H. 1999) ("Once an employee gives notice of a need for leave that may be FMLA-qualified, it is the employer's duty to inquire further to determine whether the FMLA applies." (quoting Price v. City of Fort Wayne, 117 F.3d 1022, 1025 (7th Cir. 1997))); see also supra note 136 and accompanying text.

[182] See, e.g., 29 C.F.R. § 825.220(a)(1); Degan, 2006 U.S. Dist. LEXIS 4349, at *8–12 (denying defendants' request for summary judgment where plaintiff alleged termination in retaliation for her FMLA request).  The alleged retaliatory acts could be a violation even if the leave itself was unprotected.  See Colburn, 429 F.3d at 333, 336 n.10 (citations omitted).

[183] See supra note 165 and accompanying text.

[184] See supra note 176.

Plaintiff of his FMLA rights, denying Plaintiff his request for FMLA leave, failing to pursue its obligation to inquire, and retaliating against Plaintiff for exercise of his rights could violate Plaintiff's rights under the FMLA. Other courts have even found that such rights under the FMLA are clearly established.[185]

As explained above, Plaintiff has alleged sufficient facts to show that the Individual Defendants' conduct violated his FMLA rights. The law at the time was clearly established to put the Individual Defendants on notice that their conduct violated the FMLA. Lastly, a reasonable defendant under the same circumstances as the Individual Defendants would have understood that the conduct at issue violated Plaintiff's statutory rights. The Individual Defendants are therefore not entitled to a defense of qualified immunity.

IV.    Conclusion

For the foregoing reasons, including Eleventh Amendment immunity, Plaintiff's failure to state a claim, and MTCA requirements, the DEP's Motion to Dismiss [#8] is ALLOWED.

The Individual Defendants are immune from this suit in their official capacities. The Individual Defendants, however, may be liable in their individual capacities for a violation of the FMLA. The Individual Defendants, moreover, are not entitled to qualified immunity for the alleged violations of the FMLA. The Individual Defendants' Motion to Dismiss [#4], therefore, is ALLOWED IN PART and DENIED IN PART.

AN ORDER HAS ISSUED.

                                         /s/ Joseph L. Tauro
                                         United States District Judge

_____

[185] See, e.g., Darby, 287 F.3d at 681 (explaining that the qualified immunity defense does not apply because the FMLA creates "clearly established statutory rights").